Present:  All the Justices

BOARD OF SUPERVISORS OF
PRINCE WILLIAM COUNTY

v.     Record No. 960508     OPINION BY JUSTICE ELIZABETH B. LACY
                                          January 10, 1997
OMNI HOMES, INC.

OMNI HOMES, INC.

v.     Record No. 960471

BOARD OF SUPERVISORS OF
PRINCE WILLIAM COUNTY

              FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                        Richard B. Potter, Judge


        In this appeal, we consider a property owner's claim that

government action constituted an uncompensated taking of

property in violation of the Fifth Amendment of the United

States Constitution or Article I, § 11 of the Constitution of

Virginia.

        In 1986, Omni Homes, Inc. (Omni) executed a contract to

purchase a 72.68-acre parcel of unimproved land located in

Prince William County and, in 1989, bought the parcel for

$436,091.  The property was zoned R-10, urban residential

development, and Omni proposed to develop the land as Doves

Landing subdivision with 106 residential lots.  The property

was located adjacent to an undeveloped 188-acre parcel owned by

 Doves Landing Associates (DLA).  DLA planned to develop its

property as Doves Overlook subdivision with approximately 405

residential lots.

        Development of Doves Landing as a subdivision required

securing certain road and utility access.  The property was

three miles from public water and sewer access, and the only access to a public road was over a gravel road called Doves Lane. To obtain adequate access to the public road, Omni could purchase additional easements along Doves Lane from adjoining property owners and upgrade the road, or it could design a new road through Doves Overlook. Similarly, Omni could secure access to the needed utilities by paying the full three-mile extension costs or could agree to share the cost of the utility extension with DLA, the owner of Doves Overlook. Omni decided to base its R-10 development plan on providing road, sewer, and water access through and in conjunction with Doves Overlook and its owner.

DLA and Omni had an informal understanding that if Doves Overlook was developed as an R-10 subdivision, DLA would permit Omni to "piggyback" on its plans so that the road access and public sewer and water could run through Doves Overlook and into Doves Landing. Omni and DLA also "agreed to agree later" that they would enter into a cost-sharing agreement in which Omni would pay its pro rata share of the road and utility extension cost on a per lot basis. However, there was no written agreement between Omni and DLA to this effect, and Omni did not have any easements or other property interests in Doves Overlook that would permit it to construct the infrastructure through Doves Overlook.

DLA submitted its preliminary subdivision plan for Doves

Overlook in October 1987. In the opinion of the County, the plan proposed a public facility which was inconsistent with the County's Comprehensive Plan, and necessitated a review under Code § 15.1-456. The County's position led to a series of appeals, culminating in a determination by the Circuit Court of Prince William County that such review was not necessary. This Court refused the County's petition for appeal on January 9, 1990. Doves Overlook's preliminary plan was approved on February 7, 1990.

Meanwhile, in January 1988, Omni submitted its preliminary subdivision plan for Doves Landing to the County for approval. On January 12, 1988, the County told Omni that its plan did not meet minimum requirements because it did not show access to a public road through Doves Overlook. The County also informed Omni of the litigation involving DLA's subdivision plan for Doves Overlook. Omni proceeded with its plans, completing its contract to purchase the Doves Landing parcel in January 1989, and re-filing its subdivision plan in April 1989. The County returned the plan in May, suggesting that it was premature until the appeals surrounding DLA's subdivision plan for Doves Overlook were resolved. Omni sued the County to force it to process Omni's plan. That litigation was settled by an agreement that the County would process the plan, but no approval would be given until the conclusion of the litigation between DLA and the County.

3

The County informed Omni in June 1990, that the Doves Landing preliminary plan could not be presented to the planning commission until access to the public road was secured by an approved, bonded road through Doves Overlook. The Doves Overlook plan did not show such a road. Omni acknowledged the requirement and the County agreed to hold the plan open.

In November 1990, the County adopted regulations required for implementation of the Chesapeake Bay Preservation Act. Code §§ 10.1-2100 through -2116. These regulations affected Doves Overlook, and DLA sued the County for inverse condemnation. That litigation was settled by a consent decree entered on October 6, 1993, in which the County paid DLA $3.7 million for Doves Overlook under a three-year lease/purchase agreement.

On April 4, 1994, Omni filed the instant litigation alleging that the County's various actions amounted to a taking of Omni's property without compensation in violation of the Fifth Amendment to the United States Constitution (Fifth Amendment), 42 U.S.C. § 1983, and Art. I, § 11 of the Constitution of Virginia (Art. I, § 11). Following an ore tenus hearing, the trial court determined that the purchase of Doves Overlook by the County qualified as regulatory action and constituted a compensable taking or damaging of Omni's property for purposes of the Fifth Amendment and Art. I, § 11. The trial court entered an order requiring the County to pay Omni

4

$850,000.  The trial court denied Omni's request for attorneys' fees and dismissed Omni's claim under 42 U.S.C. § 1983 on ripeness grounds.  The County and Omni filed separate appeals challenging a number of the trial court's rulings.  We awarded both appeals and combined them for argument and disposition here.

Omni argues, and the trial court held, that the property interest in issue was Omni's right "to use its property, and to do so at a density permitted under the R-10 zone."[1]  The trial court determined that, at the time the County purchased Doves Overlook, development of Doves Landing by using Doves Overlook for road, water, and sewer access was the only remaining economically viable use of Omni's land.  Consequently, the County's purchase of Doves Overlook, according to the trial court, caused Omni to lose all economically viable uses of its property.  Thus, the trial court held that the County's action was an uncompensated taking in violation of the Fifth Amendment and Art. I, § 11.

The trial court also held that, even if the County's action did not preclude all economically viable uses, an

_____

[1]The parties disagree over the property right at issue in this case.  The County asserts that the interest affected by its purchase of Doves Overlook was Omni's ability or right to develop its property with and through Doves Overlook.  Resolution of these conflicting views is unnecessary in light of our disposition of the case.  For purposes of this opinion, we utilize the trial court's description of the right at issue.

5

uncompensated taking occurred under both the federal and state constitutions. The trial court found that the economic impact of the County's actions on Doves Landing went beyond mere diminution of the value of the land and that Omni's reasonable investment-backed expectations were frustrated by the County's action. Finally, the trial court held that Omni suffered damage, as that term is used in Art. I, § 11, because the right to develop Doves Landing as an R-10 subdivision was a right appurtenant to the land, and the County's purchase of Doves Overlook directly and specially decreased the value of Omni's property.

Principles of appellate review require that the judgment of the trial court be upheld unless it is plainly wrong or without evidence to support it. Carter v. Carter, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982). However, we are not bound by the trial court's view of the law. See City of Richmond v. Braxton, 230 Va. 161, 163-64, 355 S.E.2d 259, 261 (1985). In this case, the trial court erred in its interpretation of the relevant legal standards used to determine whether property has been taken under the federal and state constitutions. Applying these standards, we conclude that the facts do not support a finding of a compensable taking or damage under either the federal or state constitutions and, accordingly, we will reverse the judgment of the trial court. We first review Omni's Fifth Amendment claim.

FIFTH AMENDMENT

The Fifth Amendment prohibits the government from taking private property for public use without just compensation. Until 1992, the United States Supreme Court had enunciated various criteria to be applied by the courts in considering whether a compensable taking had occurred. These criteria did not provide a bright line test but required courts to engage in a case-by-case, ad hoc analysis. Florida Rock Industries, Inc. v. United States, 18 F.3d 1560, 1570 (Fed. Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 898 (1995). A compensable taking occurred if government regulation went "too far," Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922), based on consideration of: (1) the character of the government's action; (2) the economic impact of the regulation on the claimant; and (3) the extent to which the regulation has interfered with distinct investment-backed expectations. Penn Cen. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978).

In 1992, Justice Scalia, writing for the majority in Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992), explained that this "case-specific inquiry" is not necessary when the government physically takes possession of property or regulatory action deprives property of "all economically beneficial or productive use." Id. at 1015. Such governmental action goes "too far" and constitutes a categorical taking for purposes of the Fifth Amendment. Id. at

1015, 1019.

The Court in Lucas also set out a new test for determining whether a take is compensable, even in categorical takings: if the "owner's estate shows that the proscribed use interests were not part of his title to begin with," the owner is not entitled to compensation. Id. at 1027. Stated another way, the limitation imposed by the government which constitutes the taking "must inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership." Id. at 1029. The regulation must "do no more than duplicate the result that could have been achieved in the courts - by adjacent landowners . . . under the State's law of private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally, or otherwise." Id.

The facts in Lucas involved a categorical taking and thus did not require further discussion of whether regulatory action which results in less than a per se or categorical taking can be a compensable taking. Nothing in Lucas, however, indicated an intent to limit compensable takings under the Fifth Amendment to such instances. Courts considering the issue since Lucas have continued to resolve Fifth Amendment claims involving less than a categorical taking of property by utilizing the traditional three-part test. See e.g., Concrete Pipe and Products of California, Inc. v. Construction Laborers

Pension Trust for Southern California, 508 U.S. 602, 643-47 (1993); Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp., 65 F.3d 1113, 1123 (4th Cir. 1995); Creppel v. United States, 41 F.3d 627, 631 (Fed. Cir. 1994); Loveladies Harbor, Inc. v. United States, 28 F.3d 1171, 1179 (Fed. Cir. 1994).

A.

In this case, the trial court first determined that the action of the County in purchasing Doves Overlook was a categorical taking as described in Lucas because it resulted in denying Omni all economic use of its property.

In reaching this conclusion, the trial court limited its consideration of the property's uses to those uses considered economically viable by Omni. Acknowledging that the property could be developed without using Doves Overlook either at the R-10 density, if Omni paid the full cost of the off-site roads and utility access, or at a lesser density, the trial court nevertheless concluded that neither of these plans was "economically feasible for Omni," because "by the time the County purchased Doves Overlook Omni had expended thousands of dollars to engineer, plan and develop the property, as well as attorney fees in litigation."

The constitutional inquiry, however, is not whether the remaining uses are economically feasible to the owner. The loss of the ability to develop or use the land as originally

9

intended is not a categorical taking if another economic use for the land is available, even if the value of the use is less than the value attached to the owner's desired use. Andrus v. Allard, 444 U.S. 51, 64-67 (1979); Goldblatt v. Hempstead, 369 U.S. 590, 593-94 (1962). Thus, action which limits the ability to develop or use land as originally intended or in a manner producing the largest return on investment does not qualify as a categorical taking if another economic use for the land is available. The proper inquiry is whether the action complained of stripped the land of all economic uses. Lucas, 505 U.S. at 1015; Whitney Benefits, Inc. v. United States, 926 F.2d 1169, 1172 (Fed. Cir.), cert. denied, 502 U.S. 952 (1991).

When the proper standard for determining whether there was a categorical taking of property under the Fifth Amendment is applied, it is evident that no such taking occurred in this case. The property was originally purchased for $436,000, or approximately $6,000 per acre. The value of the land after the County's purchase of Doves Overlook, according to the appraisal relied on by the trial court, was $4,200 to $5,000 an acre, based on comparable sales of lots consisting of approximately ten acres each. There was no evidence of a lack of market for such lots. The trial court itself recognized that the property could be developed in this manner. Therefore, the County's purchase of Doves Overlook did not deprive Doves Landing of all economic or beneficial use and did not constitute a categorical

10

taking of Omni's property.

B.

Similarly, the trial court erred in its alternate holding that a Fifth Amendment violation occurred even if the County's action did not eliminate all economic use of the property.  In reaching this conclusion, the trial court considered the criteria traditionally applied prior to <u>Lucas</u> – character of the government's action, economic impact of the action, and frustration of investment-backed expectations.

We begin with the trial court's analysis of the investment-backed expectations frustrated by the County's action.  While this criterion embraces a number of factors, a primary purpose is to ensure that owners seeking compensation for an alleged taking "bought their property in reliance on a state of affairs that did not include the challenged regulatory regime."  <u>Loveladies</u>, 28 F.3d at 1177; <u>see</u> <u>also</u> <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. 986, 1009-10 (1984); <u>Connolly v. Pension Benefit Guaranty Corp.</u>, 475 U.S. 211, 226-27 (1986); Robert M. Washburn, "Reasonable Investment-Backed Expectations" as a Factor in Defining Property Interest, 49 <u>Wash. U.J. Urb. & Contemp. L.</u> 63, 76 (1996).

The trial court described Omni's investment-backed expectation as purchasing Doves Landing with the expectation that it could be developed at an R-10 density.  This expectation was not speculative, the trial court concluded,

11

because Omni's feasibility studies showed such development was possible, the zoning was in place, plans had been submitted, "DLA had established its legal rights and thereby Omni's legal right to proceed with the plan," and DLA's preliminary plan had been approved. Thus, the trial court concluded, "Omni clearly had abundant reason to believe that its investment-backed expectations were reasonable and accurate and to expect the County to approve the plans for Doves Landing."

What the trial court failed to consider in its description of Omni's expectations was that the "state of affairs" relative to R-10 development of Doves Landing at all times included the requirement of adequate road and utility access. Omni was always aware of this requirement. Securing this access was not an expectation under the "state of affairs" but a risk which Omni was aware of and accepted when it purchased Doves Landing.[2] Omni's hope or optimism that it could secure the required access cannot transform a risk of development into an investment-backed expectation supported by the "state of [regulatory] affairs" at the time of purchase. One who buys with knowledge of a restraint must assume the risk of economic loss. Loveladies, 28 F.3d at 1177; Creppel, 41 F.3d at 632.

_____

[2]Testimony at trial indicated the price paid for Doves Landing was low for R-10 land, reflecting the need "to do things" including acquiring the access rights.

12

"A party may not undertake a calculated business risk and then seek reimbursement from the Government when the party's gamble does not result in its favor." Atlas Enters. Ltd. Partnership v. United States, 32 Fed. Cl. 704, 708 (1995).

Omni's gamble here went beyond merely securing road and utility access. Omni's proposed development depended on such access coming through Doves Overlook. There was no assurance that such access would be available. Omni's ownership of Doves Landing did not carry with it any right or assurance that Omni could utilize access through Doves Overlook. There were no easements or contracts giving Omni road or utility access through or with Doves Overlook. At best, Omni and DLA had an "agreement to agree" at some future time regarding the access issues. There is no evidence in the record that any of the money Omni invested in Doves Landing was spent to secure the needed access. Had DLA sold Doves Overlook to a party other than the County, Omni would be in the same position in which it finds itself now: having an R-10 development plan and hoping to secure the required road and utility access through and together with Doves Overlook.[3] Omni was always dependant on

---

[3]Reasonable investment-backed expectations are also subject to the government's power to reasonably regulate for the public interest. Lucas, 505 U.S. at 1023; Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, 1033 (3d Cir.),

13

the willingness of the owner of Doves Overlook to accommodate its development plan.

The trial court erred to the extent that it considered Omni's ability to achieve the required access through Doves Overlook as a reasonable investment-backed expectation. The trial court further erred in omitting consideration of the risk of securing road and utility access when analyzing Omni's investment-backed expectation in R-10 development of the property. Taking these matters into consideration, we conclude that the "state of affairs" upon which Omni relied when it purchased Doves Landing included the risk of not securing adequate road and utility access. The County's purchase of Doves Overlook did not impose this risk, did not change the requirements for R-10 development, and did not interfere with or frustrate any enforceable arrangement or right Omni had

cert. denied, 482 U.S. 906, reh'g denied, 483 U.S. 1040 (1987). In the absence of a vested interest, Omni was not entitled to rely on continued R-10 zoning of its own property or Doves Overlook. Snow v. Amherst County, 248 Va. 404, 408, 448 S.E.2d 606, 608-09 (1994); Vienna Council v. Kohler, 218 Va. 966, 976, 244 S.E.2d 542, 548 (1978). Regulatory action required by the Chesapeake Bay Act affected the Doves Overlook property and ultimately resulted in the change of ownership from DLA to the County.

14

regarding road or utility access. Therefore, Omni's investment-backed expectation in R-10 development does not support a claim for a compensable taking of property under the Fifth Amendment.

The access requirement for R-10 development is also relevant to consideration of the economic impact of the County's action. This criterion is measured by the difference between the fair market value of land before and after the alleged take. Florida Rock, 18 F.3d at 1563. The trial court characterized the economic impact of the County's purchase as a significant diminution of the property's value. Although the trial court reached this conclusion by considering the change in the property's fair market value, its finding was based on a pre-purchase value which assumed the existence of access rights through Doves Overlook.

The appraisal report relied on by the trial court placed the pre-purchase value of Doves Landing at $1.2 million "assuming the functional unity" of Doves Overlook and Doves Landing. The "functional unity," or access through Doves Overlook, was always a contingency, not a right attached to Doves Landing or a right which could be enforced by Omni. To base a property value on a factor which is required to develop the property, but which never existed in fact or in law, distorts the fair market value analysis in this case.

The economic impact of the County's action must be

15

measured without regard to the illusory "functional unity" between the two parcels. The value of the property absent "functional unity" prior to the County's purchase of Doves Overlook was set at $436,000, the 1989 purchase price, and at $450,000, based on an April 11, 1989 assessment, which was reaffirmed on March 6, 1991. The fair market value immediately following the County's purchase without the "functional unity" was $350,000. The economic impact, therefore, was at most a decrease of $100,000 in value, or somewhat less than one-third of the fair market value of the property prior to the County's purchase of Doves Overlook.

No single criterion or combination of criteria is dispositive in a Fifth Amendment taking analysis. See Lucas, 505 U.S. at 1071; Hodel v. Irving, 481 U.S. 704, 714-16 (1987). Here, we conclude that the trial court erred in its identification of relevant investment-backed expectations and in the factors it considered in determining the economic impact of the County's purchase of Doves Overlook on Doves Landing. When viewed properly, we find that Omni's expectation of using Doves Overlook to develop Doves Landing did not qualify as an investment-backed expectation, as that term is used in an analysis under the Fifth Amendment, and that the economic impact of the County's action was not one of significant diminution in value. In this case, based on the conclusions we have reached on two criteria, we believe it unnecessary to

consider the third criterion, the character of the County's action, because regardless of the legality or merit of the County's action, Omni did not establish a regulatory taking of Omni's property under the Fifth Amendment.[4]

ARTICLE I, § 11 OF THE CONSTITUTION OF VIRGINIA

Article I, § 11 prohibits the government from taking or damaging private property for public uses without just compensation. Code § 15.1-276 defines the constitutional term "public uses" to embrace "all uses which are necessary for public purposes." Property is considered taken for constitutional purposes if the government's action deprives the property of all economic use. City of Virginia Beach v.

_____

[4]Omni claimed a total loss of the economic use of its property or alternatively a constitutionally significant economic loss of its total property. Thus, we do not address whether the total loss of "one of the sticks" in the bundle of property rights qualifies as a compensable taking under the Fifth Amendment. Lucas, 505 U.S. at 1016 n.7. Compare Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470 (1987) and Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922); Florida Rock Industries, Inc. v. United States, 18 F.3d 1560 (Fed. Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 898 (1995); and Clajon Production Corp. v. Petera, 70 F.3d 1566 (10th Cir. 1995).

17

Virginia Land Inv. Ass'n No. 1, 239 Va. 412, 416-17, 389 S.E.2d 312, 314 (1990).

As we have previously discussed, the purchase of Doves Overlook by the County did not eliminate all economic uses of Doves Landing. Therefore, the County's action did not constitute a taking of Omni's property under Art. I, § 11. Id.

Property is damaged for Virginia constitutional purposes when an appurtenant right connected with the property is directly and specially affected by a public use and that use inflicts a direct and special injury on the property which diminishes its value. City of Lynchburg v. Peters, 156 Va. 40, 49, 157 S.E. 769, 772 (1931). Virginia law holds partial diminution in the value of property compensable only if it results from dislocation of a specific right contained in the property owner's bundle of property rights. Lambert v. City of Norfolk, 108 Va. 259, 268, 61 S.E. 776, 778-79 (1908).

Omni argues, and the trial court held, that the right to develop one's property is an "appurtenant right connected to the property" and that such right was directly and specially affected by the County's actions resulting in the loss of the "only viable economic use of the property." However, Omni has not lost the right to develop its property. The R-10 density classification has not been altered. Omni seeks to transform a risk attached to the development of its land at R-10 density into a right to do so. As discussed above, Omni had not

18

acquired the rights necessary to realize its preferred method of development either as a matter of contract or easement. There was no right appurtenant to Doves Landing which would allow Omni to develop it with and through Doves Overlook. The action of the County in purchasing Doves Overlook could not damage a non-existent right. Accordingly, we conclude that the County's purchase of Doves Overlook did not damage Omni's property within the contemplation of Art. I, § 11.

For these reasons we will reverse the judgment of the trial court and enter judgment in favor of the County in Record No. 960508.[5] In light of this holding, we will dismiss Omni's separate appeal, Record No. 960471, challenging the trial court's disposition of its claims under 42 U.S.C. § 1983 and for attorneys' fees because it is moot.

Record No. 960508 – <u>Reversed and final judgment.</u>
Record No. 960471 – <u>Dismissed.</u>

---

[5]Our disposition of the case makes consideration of the County's assignments of error regarding whether the County's purchase qualified as regulatory action and Omni's retention of the fee interest in Doves Landing unnecessary.