# CIRCUIT COURT OF THE CITY OF SALEM

Wilson

v.

City of Salem

Case No. CH99-154

Munley

v.

City of Salem

Case No. CH99-004

May 24, 2001

BY JUDGE CLIFFORD R. WECKSTEIN

In amended bills of complaint, the plaintiffs allege, among other things, that Salem City Council's decision about where, on city-owned property, to erect a structure should be judicially invalidated because Council violated the Virginia Freedom of Information Act (FOIA) when it made this decision and that the City Council violated 42 U.S.C. § 1983 in making the land-use and planning decisions that are under attack in these cases.

The defendant has demurred to these claims. A demurrer "tests the sufficiency of factual allegations to determine whether the [bill of complaint] states a cause of action." *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181 (1993). When considering demurrers, the court must treat the

plaintiffs' factual assertions as true, giving the plaintiffs the benefit of all inferences that fairly can be drawn from the facts alleged; the court also must assume the truth of all assertions of fact that can be "fairly and justly inferred" from the amended motion for judgment. However, the plaintiff is not entitled to have the court assume that their legal theories are correct. *Breeding v. Hensley*, 258 Va. 207, 211-12, 519 S.E.2d 369 (1999); *Runion v. Helvestine*, 256 Va. 1, 7, 501 S.E.2d 411 (1998); *Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254 Va. 379, 383, 493 S.E.2d 516 (1997); *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988). Upon consideration of the pleadings, the memoranda and arguments of counsel, and the decided authorities, the court sustains the demurrers to these two claims.

These are the facts, as stated by the plaintiffs and viewed in the light most favorable to the plaintiffs. Near the end of a meeting at which this subject was not on the agenda, City Council decided, in less than ninety seconds and without discussion, to erect a "gargantuan" multi-million dollar water tower (which also will contain space for storage, offices, and workshops) on city-owned property known as the Elizabeth Campus. Around a month earlier, Council had indicated that the tower would be built elsewhere and had asked the Planning Commission to undertake a study of how best to use the Elizabeth Campus, the largest undeveloped tract in the City of Salem. The citizens who were, as Council members knew, most interested in the subject, had left the meeting before the water tower motion was made, seconded, and passed. The plaintiffs are taxpaying citizens of the City of Salem, some of whom live close to, and within sight of, the portion of the Elizabeth campus.

## The FOIA Claim

On the plaintiffs' claim under FOIA, one could "fairly and justly infer" that when members of Council voted in public, they had discussed and decided the matter in private, in violation of the open-government provisions and policies of FOIA, Virginia Code §§ 2.1-340 *et seq.* (Other inferences could be drawn, including the inference that a member of Council had, consistently with the provisions of § 2.1-343.2, separately contacted the members of Council for the purpose of ascertaining each member's position on this issue of public business. On a demurrer, however, the inferences drawn must be those which most favor the plaintiffs' position.)

The plaintiffs' legal theory is that Council's action is void under Code § 2.1-340.1, which states, in part, that "[a]ny ordinance adopted by a local governing body which conflicts with the provisions of this chapter [FOIA] shall be void." Since the local governing body acted in conflict with the

provisions of FOIA, the plaintiffs reason, the governing body's decision is void. They also point to the fact that § 2.1-343.2 states that, except where specifically authorized by law, "no vote of any kind of the membership, or any part thereof, of any public body shall be taken to authorize the transaction of any public business, other than a vote taken at a meeting conducted in accordance with the provisions of this chapter." Plaintiffs note that § 2.1-340.1 directs that "the provisions of [FOIA] shall be liberally construed."

Plaintiffs' counsel has, at the court's invitation, searched for decisions in other jurisdictions which might support the position the plaintiffs advance in this case. With commendable candor, counsel for the plaintiffs has reported that, "We have found some cases that are extremely persuasive by analogy but none directly in point. We can report, therefore, with relative confidence that there is absolutely no controlling case law in point — at least none that we have found." (Petitioners' Memorandum in Support of the Application of Virginia's Freedom of Information Act, at 2.) Though cases have been cited under the laws of jurisdictions whose freedom of information acts employ language significantly different from that in the Virginia FOIA, neither counsel nor court has been able to find a decision helpful to the plaintiffs, under a statute which uses words similar to those of the Virginia FOIA.

As the City notes, an insurmountable problem with the theory that § 2.1-340.1 invalidates Council's action is, of course, the fact that the challenged action did not involve adoption of an ordinance. Plaintiffs would have the court "liberally construe" the words "any ordinance adopted" to mean "any action taken." "It is firmly established that, when a statute is clear and unambiguous, a court must accept its plain meaning and not resort to rules of construction or extrinsic evidence. *Carr v. Forst*, 249 Va. 66, 69-70, 453 S.E.2d 274, 276 (1995)." *Wall v. Fairfax County Sch. Bd.*, 252 Va. 156, 159, 475 S.E.2d 803 (1996). There is no ambiguity or lack of clarity in the words "an ordinance." Thus, there is nothing to construe — liberally or otherwise. City Council did not adopt an ordinance, and the statute under which the plaintiffs would have the court invalidate City Council's decision about how to use city-owned property is, on its face, inapposite.

Arguing by analogy from decisions of courts whose FOI Acts are significantly different from Virginia's FOIA, plaintiffs would have the court read into Virginia's FOIA a requirement that City Council not act on any matter that was not listed on a previously-available agenda. The Virginia FOIA has provisions which speak about agendas. Code § 2.1-343, in pertinent part, says:

F. At least one copy of all agenda packets and, unless exempt, all materials furnished to members of a public body for a meeting shall be made available for public inspection at the same time such documents are furnished to the members of the public body.

Code 2.1-343.1 applies to public bodies of the state itself, and not to local governments. State bodies are permitted to hold public meetings "through telephonic or video means" when, *inter alia*:

D. An agenda and materials which will be distributed to members of the public body and which have been made available to the staff of the public body in sufficient time for duplication and forwarding to all locations where public access will be provided shall be made available to the public at the time of the meeting.

No Act of the General Assembly, other than § 2.1-343(F) speaks of agendas for meetings of city councils. In fact, no provision of Virginia law requires city councils to *have* agendas for their meetings. The plaintiffs would have the court engraft upon the FOIA a provision that no city council take up any matter of public business unless that matter was listed on an agenda. "We must also assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute. 'Courts are not permitted to rewrite statutes. This is a legislative function'. . . ." *Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672 (1990). "Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." *Id. See also* Code § 15.1-79.75, which deals with condominium owners' associations, "During a meeting at which the agenda is limited to specific topics or at a special meeting, the executive organ may limit the comments of unit owners to the topics listed on the meeting agenda." *Cf.* Code § 15.2-802. Plaintiffs suggestion that the spirit and intent of Virginia's FOIA would be best served if only matters appearing on the agenda were considered at a meeting of a local governing body must be addressed to the General Assembly. *See, e.g.* Oklahoma Open Meeting Act, § 25-311. It goes far beyond the proper province of statutory construction. Since there is no requirement in Virginia's FOIA for matters taken up by Council to first appear on a written agenda, there are no facts pleaded to support the contention that the vote was taken at a meeting that was anything other than "a meeting

conducted in accordance with the provisions of this chapter," as required by Code § 2.1-343.2.

Plaintiffs argue that, under the City Charter, Council must act, when it does so, through ordinances. They suggest that, though no ordinance was adopted when Council decided where to erect the water tower, Council's vote was tantamount to adopting an ordinance. Since, as they construe the facts, the decision was made before the public meeting at which the vote was taken, plaintiffs argue that under Code § 2.1-340.1, the decision about where to put the tower is void. Such a construction is strained, unreasonable, and illogical.

### The 1983 Claim

In the aftermath of the Civil War, the abolition of slavery, and the adoption of the Fourteenth Amendment to the United States Constitution, Congress adopted Civil Rights Acts, including 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Plaintiffs claim that Council violated the Fifth Amendment of the United States Constitution (applicable to the states through the Fourteenth Amendment) and Article I, § 11, of the Constitution of Virginia by taking and damaging their property. In essence, their claim is that the water tower siting decision constituted a "taking" of some of the enjoyment and financial value of their property. Furthermore, plaintiffs assert that they have been deprived of "liberty interests" by Council's decision.

Violations of the Virginia Constitution are not actionable under § 1983. *See Graham v. Connor*, 490 U.S. 386, 693 (1989). That statute provides a remedy — if at all — only for a violation of federal rights. *Id.* The plaintiffs do not identify any federally-protected rights except those arising under the Fifth Amendment. The teaching of similar Fifth Amendment cases is that, in order to have a claim under 42 U.S.C. § 1983, plaintiffs must allege (and eventually prove) that state action deprived them of any "economically viable use of the property." The Supreme Court of Virginia explained, in 1997, the principles that apply:

> The Fifth Amendment prohibits the government from taking private property for public use without just compensation. Until 1992, the United States Supreme Court had enunciated various criteria to be applied by the courts in considering whether a compensable taking had occurred. These criteria did not provide a bright line test but required courts to engage in a case-by-case, *ad hoc* analysis. *Florida Rock Industries, Inc. v. United States*, 18 F.3d 1560, 1570 (Fed. Cir. 1994), *cert. denied*, 513 U.S. 1109 (1995). A compensable taking occurred if government regulation went "too far," *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922), based on consideration of: (1) the character of the government's action; (2) the economic impact of the regulation on the claimant; and (3) the extent to which the regulation has interfered with distinct investment-backed expectations. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).
>
> In 1992, Justice Scalia, writing for the majority in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), explained that this "case-specific inquiry" is not necessary when the government physically takes possession of property or regulatory action deprives property of "all economically beneficial or productive use." *Id.* at 1015. Such governmental action goes "too far" and constitutes a categorical taking for purposes of the Fifth Amendment. *Id.* at 1015, 1019.
>
> The Court in *Lucas* also set out a new test for determining whether a take is compensable, even in categorical takings: if the "owner's estate shows that the proscribed use interests were not part of his title to begin with," the owner is not entitled to compensation. *Id.* at 1027. Stated another way, the limitation imposed by the government which constitutes the taking "must inhere in the title itself, in the restrictions that background principles of the State's law

of property and nuisance already place upon land ownership." *Id.* at page 1029. The regulation must "do no more than duplicate the result that could have been achieved in the courts — by adjacent landowners . . . under the State's law of private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally, or otherwise." *Id.*

The facts in *Lucas* involved a categorical taking and thus did not require further discussion of whether regulatory action which results in less than a per se or categorical taking can be a compensable taking. Nothing in *Lucas*, however, indicated an intent to limit compensable takings under the Fifth Amendment to such instances. Courts considering the issue since *Lucas* have continued to resolve Fifth Amendment claims involving less than a categorical taking of property by utilizing the traditional three-part test. *See e.g., Concrete Pipe and Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 643-47 (1993); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1123 (4th Cir. 1995); *Creppel v. United States*, 41 F.3d 627, 631 (Fed. Cir. 1994); *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171, 1179 (Fed. Cir. 1994).

*Prince William County v. Omni Homes*, 253 Va. 59, 481 S.E.2d 460 (1997). *See also City of Monterey v. Del Monte Dunes, Ltd.*, 526 U.S. 687 (1999); *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275 (4th Cir. 1998); *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1163 (4th Cir. 1991).

Plaintiffs cite *MacLeod v. Santa Clara County*, 749 F.2d 541 (9th Cir. 1984), for the proposition that an action for inverse condemnation can support a claim under § 1983 alleging the deprivation of federal civil rights. *Id.* at 544. *MacLeod*, grounded in the jurisprudence of the Ninth Circuit, is neither binding on the courts of Virginia nor helpful to the plaintiffs.

In *MacLeod*, the plaintiff purchased a ranch for investment purposes. He then entered into a contract that was conditioned on securing a use permit from the county. The county denied the application for a use permit, and the plaintiff brought an action under § 1983, seeking compensation for the alleged taking of property. *Id.* at 542-44.

The Ninth Circuit held that "an action for inverse condemnation" is cognizable under 42 U.S.C. § 1983." *Id.* The rationale for inclusion of these actions, according to the court, is that governmental regulations "can destroy the use and enjoyment of property for the public good just as effectively as

formal condemnation or physical invasion of property." *Id.* (quoting *San Diego Gas & Elec. Co. v. San Diego*, 450 U.S. 621, 652 (1981)). The court returned, then, to the Fifth Amendment standard, determining that "there is no taking if economic viable use of the property remains." *Id.*

Thus, in order to assert a takings claim, on a theory of inverse condemnation or otherwise, the plaintiffs must allege and prove that, as a result of Council's water tower decision, their property has no economically viable use. They have not so alleged, nor do the inferences fairly to be drawn from the facts as stated by the plaintiffs suggest that they could make such an allegation. Plaintiffs allege that they still live in their homes. The only damage asserted is simply the elimination of a pleasant view, resulting in a diminution of property value.

Such damage cannot rise to the level of eliminating the "economically viable use" of the property. Furthermore, the Supreme Court's opinion in *Board of Supervisors v. Omni Homes* illustrates that the mere diminution in value of the property cannot support a § 1983 claim. Even if these homes were not suitable for residential living, plaintiffs would still not satisfy the takings standard. Plaintiffs must prove that the property is no longer "economically viable" for any use. They cannot satisfy this burden.

The plaintiffs also claim that § 1983 provides redress for the deprivation of "easements of light, air and view," noting that these are within the panoply of "property rights." (Petitioners' Memorandum in Support of their Claim Under 42 U.S.C. § 1983, at 3.) They are, however, property interests which are grounded in state law. *See First National Trust & Savings Bank, Trustee, v. Raphael*, 201 Va. 718 (1960). For example, damages to such easements figure regularly in highway condemnation cases. *See, e.g. Commonwealth v. Fairbrook Business Park Assocs.*, 244 Va. 99, 418 S.E.2d 874 (1992). The Supreme Court stated in *Graham v. Connor, supra*, 490 U.S. at 693 that § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Such easements are not "federal rights."

The plaintiffs claim that the water tower siting decision interferes with their "reasonable investment-back expectations," a "relevant consideration in a takings inquiry." (Petitioners' Memorandum in Support of their Claim Under 42 U.S.C. § 1983, at 3.) "The Petitioners before this Court," their attorney wrote, "have each invested in varying measure not only their hard-earned cash and assets, but their time and energy, hopes and dreams in moving into, maintaining, and improving their permanent residences in a selected residential neighborhood. They each had a very real expectation that the area, surrounded by other residential homes, would not be invaded by the

monstrosity they must now view as a daily diet." *Id.* Accepting this statement as true, the plaintiffs' hopes and dreams that the City of Salem would not erect a water tower on its property adjoining their neighborhood do not meet the standard required for allegations of "frustration of investment-backed expectations." *See Prince William v. Omni, supra,* 253 Va. at 68-71.

The plaintiffs also claim that they have been deprived of a "liberty interest by the City of Salem's abuse of its political powers in achieving its ends in atmospheres of secrecy and in disregard of the fundamental rights of due process." (Petitioners' Memorandum in Support of their Claim Under 42 U.S.C. § 1983 at 10.) They assert that they have a liberty interest in "the rights associated with substantive and procedural due process to which they were entitled, both as citizens at large attacking the transaction of public business that had been conducted without public notice and/or the loss of property without advance warning of their being in jeopardy." *Id.,* citing *Zinermon v. Burch,* 494 U.S. 113 (1990), for the proposition that government actors may not deprive persons of their liberty interests without due process of law.

*Zinermon* is a case in which an individual was, without due process of law, locked up for months in a mental hospital. *Id.* at 131. The Supreme Court noted that there was a substantial liberty interest in avoiding commitment to a mental institution. This liberty interest is supported by a series of United States Supreme Court cases. *Id.; see Vitek v. Jones,* 445 U.S. 480, 491-92 (1980); *Parham v. J. R.,* 442 U.S. 584, 600 (1979); *Addington v. Texas,* 441 U.S. 418, 425 (1979); *Jackson v. Indiana,* 406 U.S. 715, 738 (1972) (all cases evincing a substantial liberty interest in avoiding confinement in a mental hospital).

Suit lies under 42 U.S.C. § 1983 when someone is, without due process of law, deprived of his liberty — locked up — by a state actor. Though the plaintiffs allege that City Council acted without due process of law, they do not suggest that Council's decision to build the water tower on the Elizabeth Campus deprived anyone of personal liberty.