Present:  Carrico, C.J., Compton, Stephenson, Whiting,[1] Lacy, Hassell, and Keenan, JJ.

BOGESE, INC., ET AL.

> OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.
> September 15, 1995

v.  Record No. 941856

STATE HIGHWAY AND TRANSPORTATION
COMMISSIONER OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
James F. D'Alton, Jr., Judge

The dispositive issue in this eminent domain case, raised by an assignment of cross-error, is whether the unity of lands doctrine is satisfied.

In the early 1980's, Bogese, Inc., a Virginia corporation engaged in the business of residential and commercial real estate development (Bogese), owned an 18.664-acre tract of land in the City of Hopewell on which Bogese planned to construct a townhouse apartment development.  The sole stockholders of Bogese were, and presently are, Mr. and Mrs. Michael J. Bogese, Sr., and their sons, Michael J. Bogese, Jr., and David Bogese.

In 1984, the Virginia Department of Transportation (the Department) informed Bogese that it intended to acquire by eminent domain 2.639 acres of Bogese's property for the construction of Highway Route 295 (the Project).  The Project interfered with Bogese's plans for the property; nevertheless, Bogese decided to develop the remaining 16.025 acres.

Thereafter, Bogese conveyed the 16.025 acres to Canterbury

---

[1]Justice Whiting participated in the hearing and decision of this case prior to the effective date of his retirement on August 12, 1995.

Associates, a Virginia general partnership (Canterbury), to construct the townhouse development.  Canterbury's partners are the four stockholders of Bogese.  The transfer of the 16.025 acres was in keeping with Bogese's "normal [business] practices" and was for "tax and financing reasons."  Bogese would have transferred the 2.639 acres to Canterbury for inclusion in the townhouse development had the Department not advised Bogese of the proposed condemnation.

On February 3, 1987, pursuant to Code § 33.1-122, the State Highway and Transportation Commissioner (the Commissioner) filed a certificate of take and acquired title to the 2.639-acre tract, and, on December 4, 1989, the Commissioner filed a petition in condemnation, naming Bogese as the respondent.  Thereafter, pursuant to Code § 25-46.16,[2] Canterbury filed a petition for intervention claiming damages to its 16.025-acre tract by reason

---

[2]Code § 25-46.16 reads as follows:

> Any person not already a party to the proceedings whose property, or any interest or estate therein, is to be taken or damaged, or who claims that his other property, or any interest therein will be damaged as a result of the taking and use by the petitioner, may, upon his petition for intervention filed by leave of court at any time prior to the beginning of the trial of the issue of just compensation, or, in the discretion of the court, at such other times during the pendency of the proceeding upon such terms and conditions as the court deems proper, considering all the circumstances at that time, be made a party to the proceeding and be permitted to assert any claim or defense then germane to the proceeding in accordance with the other provisions of this chapter upon such terms and conditions as the court deems reasonable and proper.

of the Commissioner's acquisition of the 2.639-acre tract.  Over the Commissioner's objection, the trial court permitted Canterbury to intervene.

At trial, however, the court ruled that Canterbury failed to prove damage to the 16.025-acre tract and directed that the commissioners determine only the value of the 2.639-acre tract. Consequently, Bogese's recovery was limited to $52,500, the value the commissioners had placed on the 2.639-acre parcel.  Bogese and Canterbury appeal.

Generally, when a portion of a tract of land is taken by eminent domain, the owner is entitled to recover for the damage to the remainder of that tract, but not for damage to separate and independent tracts.  An exception to the general rule is the so-called unity of lands doctrine.  See Virginia Electric, Etc., Co. v. Webb, 196 Va. 555, 566, 84 S.E.2d 735, 741-42 (1954). Under this doctrine, an owner may be compensated for damage to other tracts of land caused by a taking when three factors are present, viz., unity of use, physical unity, and unity of ownership.

In the present case, unity of use and physical unity are not contested.  Unity of ownership, however, is disputed because, at the time of the taking, Bogese owned the 2.639-acre tract and Canterbury owned the 16.025-acre tract.  Bogese and Canterbury contend that the unity of lands doctrine is satisfied, nonetheless, because, even though the ownership of the two

parcels "is not identical," the parcels are "in substantially identical ownership." The issue presented is one of first impression for the Court. Courts in other jurisdictions, however, are divided on the issue.

We have considered the authorities cited by Bogese and Canterbury in support of their contention, e.g., Housing Auth. of Newark v. Norfolk Realty, 364 A.2d 1052 (N.J. 1976); M.T.M. Realty Corp. v. State, 261 N.Y.S.2d 815 (N.Y. Ct. Cl. 1965). According to these authorities, two parcels, each owned by a different entity, may be considered as a single parcel to establish unity of ownership when the entities are integrated by family ownership, business purpose, and actual practice.

We are unwilling, however, to adopt the position articulated by these authorities. We think the better view is represented by those jurisdictions that have considered and rejected the contention espoused by Bogese and Canterbury.

In Sams v. Redevelopment Auth., 244 A.2d 779, 780 (Pa. 1968), two non-contiguous tracts were jointly owned by two individuals. One tract, a salvage yard, was operated by the same individuals as a partnership. The other tract, a foundry, was operated by the individuals as a corporation. The tract operated by the partnership was acquired by eminent domain, and no part of the tract operated by the corporation was taken. The corporation sought damages to its tract, arguing that the tracts were owned by the same owners and were used together for an integrated

- 4 -

purpose.  The Supreme Court of Pennsylvania, in discussing the unity of use, stated that "[t]he corporate entity or personality will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime."  Id. at 781.  The Pennsylvania court, in rejecting the condemnees' contention, further stated the following:

> Here the corporate shareholders are requesting that the corporate enterprise, voluntarily formed for certain business advantages, ought to be disregarded for their benefit in order to receive increased damages as a result of the present condemnation proceedings.  This we refuse to do.
>
> . . . In our view, one cannot choose to accept the benefits incident to a corporate enterprise and at the same time brush aside the corporate form when it works to their (shareholders') detriment.  The advantages and disadvantages of the corporate structure should be seriously considered and evaluated at the time such organization is contemplated and after incorporation has been selected, the shareholders cannot be heard to argue that the courts should not treat them as a corporation for some purposes and as a corporation for other purposes, whichever suits their present economic interest.

Id.

Similarly, in Board of Transp. v. Martin, 249 S.E.2d 390, 396 (N.C. 1978), the Supreme Court of North Carolina ruled that, for the purpose of assessing condemnation damages, a parcel of land owned by an individual and an adjacent parcel of land owned by a corporation of which that individual is the sole or principal shareholder cannot be treated as a unified tract.  In so holding, the North Carolina court opined that "[w]here persons have deliberately adopted the corporate form to secure its

- 5 -

advantages, they will not be allowed to disregard the existence of the corporate entity when it is to their benefit to do so." Id. (citing Schenley Distillers Corp. v. United States, 326 U.S. 432 (1946)).  For other cases reaching the same result, see Arnold v. South Carolina Public Service Auth., 356 S.E.2d 837 (S.C.), cert. denied, 484 U.S. 914 (1987); Jonas v. State, 121 N.W.2d 235 (Wis. 1963).

The rationale expressed by these authorities better comports with previous statements of this Court.  As we have said, it is elemental that a corporation is a legal entity that is completely separate and distinct from its shareholders, and only "`an extraordinary exception'" will justify piercing the corporate veil.  Cheatle v. Rudd's Swimming Pool Supply, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987) (quoting Beale v. Kappa Alpha Order, 192 Va. 382, 397, 64 S.E.2d 789, 797 (1951)).  For example, the corporate fiction will be disregarded when it is a device used to mask wrongs, obscure fraud, or hide crime.  Id.

We hold, therefore, that, because the two tracts in the present case were owned by different entities at the time of the taking, unity of ownership did not exist, and, thus, the unity of lands doctrine is not satisfied.  Accordingly, we will affirm the trial court's judgment.

Affirmed.