PRESENT:  All the Justices

CITY OF VIRGINIA BEACH

                                              OPINION BY
v.  Record No.  971117        JUSTICE CYNTHIA D. KINSER
                                          February 27, 1998
RICHARDSON C. BELL,
TRUSTEE FOR BELL LAND TRUST

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                     Edward W. Hanson, Jr., Judge


        In this appeal, we consider first whether the City of

Virginia Beach (the City) is a proper defendant in this

action for inverse condemnation.  We next determine whether

the denial of a permit required by the City's Coastal

Primary Sand Dune Zoning Ordinance (the Ordinance)

constitutes a regulatory taking and thereby requires the

City to compensate the property owner for the value of the

property taken.  Because the denial of the permit was

pursuant to the City's Ordinance, the City is a proper

defendant.  However, because the City's Ordinance pre-dates

the owner's acquisition of the property, the denial of the

permit does not constitute a compensable taking.

Accordingly, we will reverse the judgment of the circuit

court.

                              I.

        The General Assembly enacted the Coastal Primary Sand

Dune Protection Act (the Dune Act) in 1980.  See Code §§

62.1-13.21 to -13.28.[1]  The policy behind the Dune Act is to "preserve and protect coastal primary sand dunes and beaches and to prevent their despoliation and destruction and whenever practical to accommodate necessary economic development in a manner consistent with the protection of such features."  Code § 62.1-13.21.  The Dune Act contains a model ordinance which certain local governments, including the City, could adopt.  See Code § 62.1-13.25.

In 1980, the City passed the Ordinance, which mirrors the Dune Act's model ordinance.  See Va. Beach Code §§ 1600-1619.  The Ordinance regulates the use and development of coastal primary sand dunes and requires developers who wish to "use or alter any coastal primary sand dune within this city" to obtain a permit from the Virginia Beach Wetlands Board (the Wetlands Board).  Va. Beach Code § 1603.  If the Wetlands Board denies the permit application, the applicant may either resubmit the application in modified form or seek review by the Virginia Marine Resources Commission (VMRC).  See Va. Beach Code § 1608 (c); Code § 62.1-13.27.

_____

[1]  The Dune Act was originally codified in Code §§ 62.1-13.21 to -13.28.  For purposes of this opinion, references to the Dune Act are to the sections in effect when this action was commenced.  The Dune Act is now recodified as Coastal Primary Sand Dunes and Beaches in Code §§ 28.2-1400 to -1420.

2

The instant appeal involves two parcels of land, lots 21 and 22, located seaward of the primary coastal dune on the Chesapeake Bay shore. In 1979, Seawall Enterprises, Inc. (Seawall), a corporation in which Richardson C. Bell (Bell) and his wife owned 50% of the stock, bought the two parcels. When Seawall purchased lots 21 and 22, neither the Dune Act nor the Ordinance was in existence. Seawall intended to develop residential houses on the lots and attempted to do so in 1979; however, the City did not approve the plan.

When Seawall dissolved, Bell and his wife received title to lots 21 and 22 by a deed dated August 5, 1982. In late 1982, Bell submitted to the City an application to develop lots 21 and 22, but the City did not approve the 1982 plan either. In 1992, Bell again submitted a development plan for the two lots.[2] The City informed Bell that he first had to submit the plan to the Wetlands Board and obtain a dune permit as required by the Ordinance. However, upon his pursuit of such a permit, the Wetlands Board denied Bell's application.

---

[2] Bell's development proposal was to construct a roadway, water and sewer extensions, and a bulkhead for a single family dwelling.

After the Wetlands Board's denial, Bell appealed to the VMRC, which also denied Bell's application. Bell then appealed to the court below, and on November 3, 1993, the court affirmed VMRC's decision. By that time, the Bells had divorced, and in a deed dated March 17, 1993, Bell and his wife transferred lots 21 and 22 to the Bell Land Trust. Bell is currently the trustee of that trust.[3]

In August 1995, the Trustee filed an amended motion for judgment against the City. In the motion, the Trustee alleged that the Wetlands Board's denial of Bell's application for a permit deprived lots 21 and 22 of all economically beneficial use and therefore constituted a regulatory taking in violation of Article I, § 11 of the Constitution of Virginia. The Trustee thus sought compensation from the City for the value of the property taken.

A jury trial was held in January 1997. The City moved to strike the evidence at the conclusion of the Trustee's evidence as well as at the conclusion of all the evidence. The trial court denied both motions, and the jury returned a verdict in favor of the Trustee, awarding damages of

---

[3] For purposes of clarification, when we use the name "Bell," we refer to his acting in an individual capacity. When we address his actions as trustee of the Bell Land Trust, we will use the term "Trustee."

$110,000 plus interest.  The City filed a motion to set aside the verdict, which the court denied.  The trial court then entered judgment in favor of the Trustee.  The City appeals.

## II.

### A.

The first issue is whether the City is a proper defendant.  "It is axiomatic that a plaintiff has the duty to name the proper parties as defendants . . . ."  Lake v. Northern Virginia Women's Medical Center, Inc., 253 Va. 255, 260, 483 S.E.2d 220, 222 (1997).  The City contends that it is not a proper defendant because when it adopted the Ordinance, it was implementing state policy.  The City also posits that the Wetlands Board, in denying Bell's application, was acting pursuant to the Dune Act and was therefore also implementing state policy.  Consequently, under this theory, the denial of the permit constituted state action.  In sum, the City argues that since the City had minimal involvement with the regulation of lots 21 and 22, the City is not a proper defendant.

We reject these contentions.  First, the City enacted the Ordinance with the stated intent to "regulat[e] the use and development of coastal primary sand dunes."  Va. Beach Code § 1600.  Thus, the restriction imposed on the property

5

was the result of city, not state, policy.  Second, in refusing to issue the permit, the Wetlands Board was acting pursuant to the City's Ordinance, which bestows upon the Wetlands Board the power to grant or deny permit applications.[4]  Nor is it relevant that the final administrative decision was from the VMRC, a state agency. In denying the application, the VMRC was using its statutory power to review the decision of the Wetlands Board.  Code § 62.1-13.11.  In conducting its review, the VMRC was ensuring that the Wetlands Board, a city agency, was acting in accord with the Dune Act.  Therefore, the VMRC was determining the legality of city, not state, action.  Thus we conclude that the City is a proper defendant.

B.

We next consider whether the Wetlands Board's denial of Bell's application resulted in a compensable taking. Article I, § 11 of the Constitution of Virginia prohibits the government from taking or damaging private property for public uses without just compensation.[5]  The United States

---

[4]  Indeed, the Wetlands Board's Notice of Public Hearing states that in considering the application, the Wetlands Board was acting "[p]ursuant to the City of Virginia Beach Zoning Ordinance, Articles 14 and 16."

[5]  Article I, § 11 provides in pertinent part:

6

Supreme Court has stated that a compensable taking exists

for purposes of the Fifth Amendment, without the need for a

"case-specific inquiry," when state regulations compel

property owners "to suffer a physical 'invasion' of [their]

property" or when regulatory action "denies all

economically beneficial or productive use of land."  Lucas

v. South Carolina Coastal Council, 505 U.S. 1003, 1015

(1992).[6]  The Trustee contends that the denial of the permit

was a categorical taking under Lucas because the

Ordinance's effect is to eliminate the property's only

economically beneficial use.[7]

However, in Lucas the Court also recognized that not

all categorical takings are compensable.  The Court

---

> [T]he General Assembly shall not pass any law
> . . . whereby private property shall be taken or
> damaged for public uses, without just
> compensation . . . .

[6]  Lucas addressed the issue of regulatory taking in the context of the Fifth Amendment to the United States Constitution.  However, in interpreting art. I, § 11 of the Constitution of Virginia, we have cited to and sought guidance from cases involving takings under the Fifth Amendment.  See, e.g., City of Virginia Beach v. Virginia Land Investment, 239 Va. 412, 417, 389 S.E.2d 312, 314 (1990); Commonwealth ex rel State Water Control Board v. County Utilities Corp., 223 Va. 534, 542, 290 S.E.2d 867, 872 (1982).

[7]  We assume, without deciding, that the Trustee may assert the denial of a permit application submitted by

7

declared that a state may "resist compensation," even in categorical takings, if an "inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with." Lucas, 505 U.S. at 1027. Thus, a property owner may seek compensation for a categorical taking only when the state is exercising regulatory power over the "bundle of rights" that the owner acquired when first obtaining title to the property. Id.

We, therefore, disagree with the Trustee's contention that the denial of the application is akin to the compensable taking found in Lucas. The instant case differs from Lucas in a significant aspect: the timing of the owner's purchase of the property in relation to the effective date of the regulatory restriction. In Lucas, the plaintiff property owners purchased the land prior to the enactment of the regulation restricting the use of their property. Thus, the subsequent regulation directly affected the property owners' "bundle of rights" which, at the time of their purchase, included the right to develop their property freely.

In contrast to Lucas, however, the Ordinance at issue here predated Bell's and the Trustee's acquisition of the

---

Bell, not the Trustee, as the basis for the Trustee's claim for inverse condemnation.

8

property.  Therefore, the "bundle of rights" which either Bell or the Trustee acquired upon obtaining title to the property did not include the right to develop the lots without restrictions.[8]  Thus, because the regulatory restriction was in Bell's and the Trustee's chain of title, the City did not deprive Bell or the Trustee of the right to develop the property freely since that right was never Bell's or the Trustee's to lose.  At best, any rights impaired by the Ordinance were those of the property owner at the time the Ordinance came into effect.

The Trustee argues, however, that the principle in Lucas is not that a property owner, in order to enjoy unrestricted development of the property, must buy the property before the enactment of the regulatory restriction.  Rather, the Trustee posits that under Lucas, a state must show that the regulatory restriction "does not proscribe a productive use that was previously permissible under relevant property and nuisance principles," and only then can the state claim that it is not taking any rights

---

[8]  Contrary to the Trustee's assertions, the fact that a residential home had once occupied lot 21 or that the surrounding lots similar to lots 21 and 22 contained residential houses does not necessitate a finding that the "bundle of rights" included the right to develop a residential home.  The only fact relevant to a proper determination of Bell's or the Trustee's property rights is the date of acquisition of the lots.

from the property owner.  Lucas, 505 U.S. at 1029-30.  In other words, according to the Trustee, the prohibited purpose under a regulatory restriction must have "always [been] unlawful;" otherwise, a restriction on development constitutes a taking.  Lucas, 505 U.S. at 1030.

However, the Trustee's argument again ignores the critical fact distinguishing Lucas from the instant case. In Lucas, the owners' acquisition pre-dated the regulatory restriction.  Therefore, the only way the State of South Carolina could have argued that the restriction was not a taking would have been to show that, at the time of the owners' purchase, fundamental nuisance and property law had always prevented them from developing their property and that the statutory restriction was simply making explicit relevant property and nuisance law.  In contrast to Lucas, not only Bell but also the Trustee acquired lots 21 and 22 after the enactment of the Ordinance restricting the property's development.  Therefore, the City need not prove the existence of any nuisance or property law preceding the Ordinance that would have prevented the development of the property.  Such an inquiry is irrelevant and unnecessary since Bell and the Trustee acquired property already burdened by regulatory restrictions.  Thus, the City, by enacting the Ordinance, took no property rights from Bell

10

or the Trustee since they cannot suffer a taking of rights never possessed.

Nevertheless, the Trustee seeks to avoid the Ordinance's restrictions by contending that the Ordinance did not pre-date Bell's ownership rights to lots 21 and 22. The Trustee posits that Seawall's acquistion of lots 21 and 22 in 1979 established Bell's ownership rights in the property because he was a shareholder in Seawall. Essentially, the Trustee asks this Court to look at the substance, and not the form, of ownership and to determine Bell's ownership rights as of 1979.[9]

The Trustee's position, however, is contrary to well-settled principles of law. It "is elementary that a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it." Cheatle v. Rudd's Swimming Pool Supply Co., Inc., 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987). In Bogese, Inc. v. State Highway and Transp. Comm'r, 250 Va. 226, 462 S.E.2d 345 (1995), we considered whether, under the unity of lands doctrine, unity of ownership existed when a corporation owned one parcel of land and a general partnership, whose

---

[9] Again, we assume, without deciding, that the Trustee can assert whatever rights Bell, as one of the grantors of the Bell Land Trust, has.

11

partners were the same individuals as the corporate shareholders, owned the adjacent parcel. In holding that unity of ownership did not exist and that two distinct entities owned the two parcels, we stated that "where persons have deliberately adopted the corporate form to secure its advantages, they will not be allowed to disregard the existence of the corporate entity when it is to their benefit to do so." Id. at 230, 462 S.E.2d at 347 (quoting Board of Transp. v. Martin, 249 S.E.2d 390, 396 (N.C. 1978)). Thus, we recognized that only "'an extraordinary exception' will justify piercing the corporate veil." Id. at 230, 462 S.E.2d at 348 (quoting Cheatle, 234 Va. at 212, 360 S.E.2d at 831).

Accordingly, Bell, who accepted the benefits of corporate ownership, cannot avoid its disadvantages. Seawall's acquisition of lots 21 and 22 in 1979 does not protect Bell or the Trustee from the restrictions of the Ordinance. Any rights that Seawall acquired in lots 21 and 22 belonged solely to Seawall as Seawall was an entity distinct and separate from Bell.[10] Thus, Bell's ownership

---

[10] The mere dissolution of Seawall did not effect a transfer in title to its property. Code § 13.1-745(B)(1). Furthermore, "[t]he termination of corporate existence shall not take away or impair any remedy available to . . . the corporation . . . for any right or claim existing . . . prior to such termination. Any such action or proceeding

12

rights in lots 21 and 22 must be defined as of 1982, not 1979.  Since the Ordinance pre-dated Bell's acquisition of lots 21 and 22, Bell, and now the Trustee, took the property subject to the Ordinance's restrictions.

Our decision that neither Bell's nor the Trustee's ownership rights include the right to develop the property free from regulatory restrictions is in accord with Prince William County v. Omni Homes, Inc., 253 Va. 59, 481 S.E.2d 460, cert. denied, __ U.S. __, 118 S.Ct. 58 (1997).  In that case, Omni purchased a parcel of unimproved land, which was adjacent to another undeveloped parcel, with the intent of building an urban residential development.  Since the development of Omni's subdivision would require obtaining road and utility access, Omni secured an informal agreement with the adjacent landowners to gain such access through the adjoining parcel.  However, Prince William County subsequently purchased the adjoining tract, thwarting Omni's plans to obtain road and utility access through the adjacent property.  Omni therefore brought

---

by . . . the corporation may be prosecuted . . . by the corporation in its corporate name."  Code § 13.1-755. Finally, any right Seawall may have had to compensation for a regulatory taking would not have passed to Bell or the Trustee.  See Riddock v. City of Helena, 687 P.2d 1386, 1388 (Mont. 1984) (holding that "the right to compensation for a taking is a personal right which does not pass to a successor with the transfer of land").

13

suit, and the trial court ruled that the county's purchase of the adjoining tract was a regulatory action that constituted a taking in violation of the Fifth Amendment of the United States Constitution and Article I, § 11 of the Constitution of Virginia.

This Court reversed, holding that the county's purchase of the adjoining tract was not a taking. We stated that Omni had not "lost the *right* to develop its property." Id. at 72, 481 S.E.2d at 467. Rather, Omni "had not acquired the rights necessary to realize its preferred method of development either as a matter of contract or easement." Id. Accordingly, the county's action did not affect Omni's property rights since Omni, at the time of the county's purchase, had no right of access through the adjacent property. Thus, since the county could not damage a nonexistent right, the purchase was not an uncompensated taking under either the United States or Virginia Constitutions.

Like the property owners in Omni, neither Bell nor the Trustee acquired the right to develop lots 21 and 22 free of the Ordinance's restrictions. Rather, the restriction on the lots was in the chain of title at the time of Bell's acquisition and likewise when Bell and his wife deeded the property to the Bell Land Trust. Thus, Bell, and now the

14

Trustee, acquired the property with full knowledge of the risk involved in attempting to develop it. "One who buys with knowledge of a restraint must assume the risk of economic loss." Omni, 253 Va. at 69, 481 S.E.2d at 465.

For these reasons, we hold that the denial of Bell's permit was not a regulatory taking for which the City owes compensation to the Trustee. Accordingly, we will reverse the judgment of the circuit court and enter final judgment here for the City.[11]

Reversed and final judgment.

---

[11] The City also assigned error to the trial court's failure to dismiss the instant action on the basis of res judicata and in admitting evidence regarding the value of lots 21 and 22. Because we find that the denial of a permit under the Ordinance does not constitute a taking for which the City owes compensation, we do not address the City's additional assignments of error.