## Richmond

Norfolk Redevelopment and Housing Authority v. James E. Baylor.

June 11, 1973.

Record No. 8108.

Present, Snead, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Walkley E. Johnson, Jr. (Crenshaw, Ware & Johnson,* on brief), for appellant.

No brief or argument on behalf of appellee.

Per Curiam.

The single issue raised by this appeal is whether, before proceeding to condemnation, the condemnor made a *bona fide* but ineffectual effort to purchase the property in compliance with Code § 25-46.5.[1]

To the petition for condemnation filed by Norfolk Redevelopment and Housing Authority (condemnor), James E. Baylor (landowner) filed a plea in abatement alleging non-compliance with the statute. By judgment order dated April 25, 1972 the trial court sustained the plea and dismissed the petition. The landowner filed no brief and made no appearance before us.

From the pleadings and the narrative statement of testimony it appears that landowner's property, consisting of two buildings on a lot containing 9,982 square feet, is situate within the boundaries defined in Redevelopment Plan for East Ghent-South Redevelopment Project in the City of Norfolk. In March 1971 Ralph Margolius, engaged by condemnor to negotiate for purchase of property within the project area, wrote to landowner inviting him to discuss the sale of his property. A second letter of similar import was addressed to landowner on May 27, 1971. By telephone Margolius told landowner that condemnor was willing to pay $20,000.00 for the property. This offer was based upon a professional appraisal made for condemnor.

Landowner, personally and through his attorney, Edward Wolcott, advised Margolius that he had invested more than that in the property; that the net rental income justified twice what had been offered; that the tax assessment indicated a higher value; that a local lending institution had appraised the property for loan purposes at $24,000.00; and that he considered the value to be not less than $50,000.00.

After consulting with condemnor, Margolius dispatched a letter dated December 17, 1971 to landowner enclosing a $20,000.00 option proposal and advising that while it was "most anxious to avoid resorting to condemnation proceedings . . . if it is impossible to agree on a voluntary sale price, the Authority will have no alternative but to resort to condemnation." Wolcott replied by letter dated December 21, 1971 rejecting the offer and suggesting "that you follow such action as your authority sees fit in acquiring the property." On March 6, 1972 condemnor filed its petition for condemnation.

The statute requires that condemnor's offer to purchase be *bona fide*, i.e., made in good faith. Such an offer need not be the full

---

[1] "Code § 25-46.5. Effort to purchase required.—No proceedings shall be taken to condemn property until a bona fide but ineffectual effort has been made to acquire from the owner by purchase the property sought to be condemned, . . ." (1973 Repl. Vol.)

appraised value. It need not be the fair market price, for that is to be determined in the condemnation proceeding if the parties fail to agree. It need not be the figure likely to be accepted. It need be only a figure likely to preserve the framework for further negotiations. If the rule were otherwise, the condemnor would begin with no bargaining leverage, and the public policy of avoiding the expense and delay of condemnation litigation by consensual bargain and sale would be forever frustrated.

Here, although condemnor's offer was less than landowner said the property had been appraised for loan purposes, it was based upon a value fixed by a professional appraisal. Such an offer is not frivolous and fully satisfies the statutory requirement.

A *bona fide* offer to purchase becomes "ineffectual" within the meaning of the statute when "negotiations proceed far enough to indicate an impossibility of agreement." *Tiller* v. *Norfolk & Western Ry.*, 201 Va. 222, 225, 110 S.E.2d 209, 212 (1959). If impossibility of agreement becomes apparent immediately, condemnor is not obliged further to pursue futile efforts. Here, negotiations began in March 1971 and continued until landowner's second refusal in December 1971. Thereafter, until the petition was filed in March 1972 there was further opportunity to negotiate to break the deadlock. It is plain that agreement was impossible.

The judgment is reversed, the condemnation petition is reinstated on the docket, and the case is remanded for further proceedings.

*Reversed and remanded.*