# TOWN OF ROCKY MOUNT

## V.

# JAMES ELWOOD HUDSON, ET AL.

Record No. 911382

September 18, 1992

Present: All the Justices

*David A. Melesco (Greer and Melesco,* on brief), for appellant.
*Michaux Raine, III (Raine & Perdue,* on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

The sole question we decide in this appeal in an eminent domain case is whether damage to the residue of property condemned was properly established.

In 1990, appellant Town of Rocky Mount filed a petition to condemn 38.547 acres of farmland in Franklin County for the purpose of erecting a waste water treatment plant. The petition, filed under the provisions of the Virginia General Condemnation Act, Code §§ 25-46.1 through -46.36, named as defendants the appellees, James Elwood Hudson and other members of the Hudson family who had an ownership interest in the land to be taken. Following the appointment of commissioners, a hearing was held during which the commissioners viewed the subject property and heard evidence on the value of the property condemned. Over the Town's objection, the Commission also heard testimony about the value of residual land owned by James Elwood Hudson.

The commissioners determined that the value of the property taken was $92,512.80 and that damage to the residue by reason of the taking was $10,000. The trial court denied the Town's motion to set aside the commissioners' report and we awarded the Town this appeal from the trial court's June 1991 order confirming the report. We limited the appeal to consideration of the validity of the award for damage to the residue.

■ Code § 25-46.20 provides that the commissioners "shall fix the value of the property to be taken and the damages, if any, to any other property beyond the peculiar benefits, if any, to such other property by reason of the taking and use thereof" by the condemnor. The measure of damages to the residue of property not taken "is the difference in the fair market value of the residue immediately before and immediately after the taking. In ascertaining such damages, both present and future circumstances which actually affect the value of the property at the time of taking may be considered, but remote and speculative damages may not be allowed." *East Tennessee Natural Gas Co.* v. *Riner*, 239 Va. 94, 100, 387 S.E.2d 476, 479 (1990); *Appalachian Elec. Power Co.* v. *Gorman*, 191 Va. 344, 353, 61 S.E.2d 33, 37 (1950).

■ The burden is upon the owner of the property condemned to prove by a preponderance of the evidence that there has been damage to the residue. *State Highway Comm'r* v. *Allmond*, 220 Va. 235, 240 n.2, 257 S.E.2d 832, 835 n.2 (1979). *Contra Virginia Elec. and Power Co.* v. *Webb*, 196 Va. 555, 567-69, 84 S.E.2d 735, 742-43 (1954).

In the present case, the only evidence on the subject of residual damage was presented by the landowners. The land taken is bordered by the Pigg River on three sides and is not contiguous to any improved road. There is access by rights of way. The highest and best use of the land taken is for agricultural purposes.

■ Neither James Elwood Hudson, nor any of the other defendants, owns any land actually adjoining the property taken. But Hudson's nephew, not a party defendant, owns significant acreage beside the river. An easement runs from the property taken across the nephew's land to an additional 39 acres owned by Hudson. This so-called "residue tract" lies about one-fourth of a mile from the land taken via the easement and a ford of the river. If the easement is not used, the distance from the land taken to the residue tract via an improved road is approximately five miles.

For some years prior to 1987, Hudson operated a dairy farm utilizing both the land taken and the residue tract. Located on the residue are two barns, four silos, a manure pit, and Hudson's former residence. The land taken had been employed for the growing of crops, such as corn and grain, used to feed the cattle in the dairy operation. When harvested, these crops were transported across the river along the easement to the barns and silos on the residue tract.

In October 1987, Hudson sold his dairy business and the dairy operation ceased. Since that time, both tracts have been leased on occasion to separate individuals.

Hudson claimed that the condemnation affected the value of the residue tract. He stated, ''Well, it has just ruined it. I can't rent it to nobody. I ain't got nowhere to make no feed or nothing, and it is just sitting there. It is just dead . . . . All those silos, milk barn, and the big barn with 72 stalls in it that housed the cows and everything is just there. Ain't nobody that wants it could rent it; it ain't no land for them to make no good of.'' When asked by his attorney to ''place any values for how [the taking] has affected the other land,'' Hudson replied, ''Well, I would say it has hurt me $20,000, at least . . . . I could have rented the whole place last year to a boy . . . at a good price, but I told him that the Town was fooling with it, to wait until we got through and see if there was anything left, and we could go from there.''

The Town challenges the award for residual damages on two grounds. First, it says that there can be no residual damage to a non-contiguous tract where, as here, there was no present, integrated use of the separate parcels at the time of condemnation. The Town points out that, at the time the petition was filed, Hudson had not been operating the dairy for three years. Thus, the Town argues, to find that the taking of the crop land damaged the second parcel amounts to pure speculation. Second, the Town contends that there was insufficient evidence to prove the amount of any residual damage.

■ We will assume without deciding that the landowner is entitled to recover for damages to the residue because, even though the parcels are not contiguous, there was somehow functional unity between them at the time of condemnation. *See generally Virginia Elec. and Power Co.* v. *Webb*, 196 Va. at 566, 84 S.E.2d at 741. We hold, however, that the landowner has failed to carry the burden of proving the amount of such damage.

■ The record is devoid of any evidence about the fair market value of the residue immediately before and immediately after the taking. Testimony that the taking ''has hurt me $20,000, at least'' is utterly insufficient to establish fair market value or to support an award of $10,000. And, there is no other evidence in the record from which the commissioners could make such a determination without engaging in conjecture and speculation. Indeed, the record does not indicate that the commissioners even viewed the residual

parcel, although such a view is not a specific statutory requirement. *See* Code § 25-46.21 (commissioners ''to view the property described in the petition'').

The landowners rely on *West* v. *Anderson,* 186 Va. 554, 42 S.E.2d 876 (1947), and contend that the evidence of residual damage is stronger in the present case than similar evidence in *West* which was the basis of an approved award. That reliance is misplaced because the sufficiency of the evidence to establish damage to the residue was not an issue in *West.* Actually, West, the landowner, had contended in the trial court that an award of $400 for damages to the residue of a strip of land taken for highway purposes was inadequate and ''apparently abandoned his original contention as to the inadequacy of the award for damages to the residue of his land'' on appeal. *Id.* at 560, 42 S.E.2d at 878-79.

Consequently, we will reverse and annul those portions of the trial court's final order which provide for an award of damages to the residue of the land taken and will enter final judgment here otherwise affirming the order.

*Reversed and final judgment.*