PRESENT: All the Justices

COMMONWEALTH TRANSPORTATION
COMMISSIONER OF VIRGINIA                              OPINION BY
                                              JUSTICE G. STEVEN AGEE
v.  Record No. 042192                              June 9, 2005

R.S. GLASS, a/k/a ROBERT S.
GLASS and R. STUART GLASS


              FROM THE CIRCUIT COURT OF LOUISA COUNTY
                      Timothy K. Sanner, Judge

     This case arises from condemnation proceedings involving

parcels of land located at the Zion Crossroads highway

intersection in Louisa and Fluvanna Counties.  The Commonwealth

Transportation Commissioner of Virginia ("the Commonwealth")

appeals from a judgment of the Louisa County Circuit Court which

confirmed a report of commissioners pursuant to Code § 25.1-233,

awarding compensation to the landowner, R. Stuart Glass.  For

the reasons set forth below, we will affirm the trial court's

judgment in part, and reverse it in part.

              I.  FACTS AND PROCEEDINGS BELOW

     The Commonwealth filed a certificate of take and a petition

for condemnation in the Clerk's Office of the Fluvanna County

Circuit Court on 20 separate tax map parcels of land owned by

Glass in all four quadrants at the intersection of Routes 15 and

250 ("Zion Crossroads").  The boundary between Fluvanna and

Louisa counties extends through the southeast, southwest and

northwest quadrants of the Zion Crossroads intersection.  On

1

Glass' motion, the condemnation proceeding was transferred to the Circuit Court of Louisa County, where the issue of just compensation was submitted to a commission pursuant to Code § 25.1-220, et seq.

Given the number of parcels involved, the trial judge severed the proceedings into three separate cases. The case at bar concerns only the judgment in Case 4367-III, pertaining to the certificate of take for Parcels 003, 03A and 005 which are all located in the northwest quadrant of the Zion Crossroads intersection and are predominately in Louisa County.

Parcel 003 ("the motel parcel") is a 3.368 acre tract with a motel and a restaurant. This parcel is at the Zion Crossroads intersection with 220 feet of frontage along Route 15 and 450 feet along Route 250. The motel parcel was zoned commercial and solely located in Louisa County.

Parcel 03A ("the 25 acre parcel") contains 25.24 acres and is contiguous to the motel parcel on the north and west and contained parking for both the motel and restaurant. Located predominately in Louisa County, that portion is zoned general commercial, while the smaller Fluvanna County portion is zoned agricultural. The 25 acre parcel has approximately 409 feet of frontage along Route 250 and 751 feet along the north side of Route 615. Most of the 25 acre parcel is wooded and unimproved.

Parcel 005 ("the 615 parcel") is a 5.32 acre parcel on the south side of Route 615 and directly across that road from the 25 acre parcel. The 615 parcel was unimproved and zoned agricultural at the time of the take, with 862 feet of frontage along Route 250 and 751 feet along the south side of Route 615. This parcel is predominately located in Fluvanna County.

As a result of the condemnation, the Commonwealth acquired the following portions of the three parcels in fee simple: 9,311 square feet from the motel parcel, 4,521 square feet from the 25 acre parcel, and 14,440 square feet from the 615 parcel. In addition, the Commonwealth acquired easements on the residue of these parcels as follows: 7100 square feet on the motel parcel for an MCI cable, 538 square feet on the 25 acre parcel for a permanent drainage easement, and a 5,436 square feet temporary construction easement on the motel parcel.

In April 2003, Glass filed a motion to add eight tax map parcels to the condemnation proceeding which were not part of the three actual take parcels.[1] Glass argued that the commission should consider damage to these parcels because they are "contiguous [to the actual take parcels], have the same

---

[1] The motel, 25 acre and 615 parcels were the subject of the certificate of take and were the only parcels from which the Commonwealth actually took land or obtained easements and are therefore collectively referred to as the actual take parcels. The separate parcels added to the condemnation proceeding at Glass' request are collectively referred to as the "additional parcels" or "non-take" parcels.

ownership, and the same highest and best use, and all of them will be affected by this condemnation." Glass identified the parcels in the northwest quadrant of Zion Crossroads that he wished to add as: Parcels 002, 034, 030, 029, 016, 001, 01A, and 01B. Parcel 002 ("the Texaco parcel"), a 1.548 acre tract, was improved with a Texaco gas station located on Route 15 north of the motel parcel and east of the 25 acre parcel. A cellular telephone tower leased to AT&T was on Parcel 029, but the remaining parcels were primarily unimproved woodland. All the additional parcels were zoned agricultural or residential except for the Texaco parcel which was zoned commercial. The additional parcels lay to the north and west of the actual take parcels and were generally bordered on the north by Interstate 64 and on the east by Route 15. The additional parcels constituted a total of 91.422 acres.

On July 23, 2003, the Commonwealth filed a motion in limine requesting that the trial court exclude all evidence relating to the value of or damage to the additional parcels. The Commonwealth alleged "[t]hat for separate parcels to be considered as residue property for the awarding of damages, there must be unity of use, physical unity, and unity of ownership," thus advancing what is commonly termed the unity of lands doctrine.

4

At an <u>ore</u> <u>tenus</u> hearing on November 24, 2003, the Commonwealth argued that Glass should not be able to present evidence as to the additional parcels because those parcels could not be considered under the unity of lands doctrine, particularly as to the element of unity of use. The Commonwealth contended Glass had not shown unity of use "because there [were] no related actual uses as of the date of take between the taken land and the land sought to be added." Glass presented evidence that he considered all the additional parcels to be commercial property and that he had purchased the parcels at different times for future commercial use. He had hired a surveyor to survey the site in order to prepare a site development plan, but stopped work on the survey when the Commonwealth initiated the condemnation proceeding.

The trial court denied the Commonwealth's motion in limine and ruled that the commission could "consider damages to the added parcels." The Commonwealth noted its exception.

At trial, the Commonwealth's witnesses testified as to the value of the actual take parcels and improvements but not as to the value of the additional parcels. Glass' witnesses testified as to the value of the improvements on the actual take parcels, but not as to the value of the actual take parcels separately. Instead, they testified to the value of those parcels and the additional parcels as a combined tract of 125.35 acres. The

5

Commonwealth objected to Glass's expert witnesses presenting all of Glass's property as one parcel without any consolidated plat approved by the County. The trial court overruled the motion, ruling that

> both counsel will be free to refer to the property consistent with their view of the evidence and [the commissioners will determine] whether this land should be viewed as one or . . . multiple parcels.

The Commonwealth's expert witnesses, Patricia O. Filer and James R. Johnston, appraised the actual take parcels and estimated the value of the fee take and the easements. The Commonwealth's appraisers agreed that the highest and best use of the property was commercial and both used a sales comparison method to determine valuation. Filer valued the motel parcel at $200,376 per acre or $4.61 per square foot. Johnston estimated the value of the motel parcel's land at $239,580 per acre or $5.50 per square foot.

With regard to the improvements, Filer established their depreciated cost and valued the motel and the restaurant on their short-term contributory worth to the land, assuming that they would continue in use for three years before being demolished. Johnston used a sales comparison approach to value the restaurant and an income approach to estimate the motel's value.

Based on their acreage values, Filer set the value of the fee take from the motel parcel at $42,831 while Johnston valued the loss at $51,211. Johnston set the damages for the MCI easement area at $7,810, while Filer determined that easement to have a value of $9,798. Filer and Johnston set damages for the temporary construction easement at $5,100.12 and $2,990, respectively. Overall, Filer and Johnston determined that the total take in fee and easements damaged the motel parcel by $57,630 and $62,511, respectively. These appraisers determined that there was no additional damage to the residue of the motel parcel.

Filer set the value of the 25 acre parcel at $37,026 per acre or $.85 per square foot. Johnston determined the value of the 25 acre parcel to be $29,000 per acre. Accordingly, the Commonwealth's appraisers valued the fee take from this parcel at $3,843 and $3,016, respectively.

Applying their appraised acreage values for the land, Filer and Johnston valued the drainage easement on the 25 acre parcel at $137 and $331, respectively. The Commonwealth's appraisers both determined that there were no damages to the residue of the 25 acre parcel.

Filer valued the 615 parcel at $130,680 per acre and the take at $43,320. Johnston set this parcel's price at $50,094 per acre and the value of the fee take at $7,990. The

7

Commonwealth's appraisers both agreed that there were no damages to the residue of the 615 parcel. Filer's total damages for the actual take and easements was $111,229.12, while Johnston opined that value to be $73,848.

Glass called three expert witnesses: Ivo H. Romenesko, R. W. Tolleson, and Albert G. Sambo Johnson. Romenesko and Johnson did not value the property by parcels, but appraised the entire 125 acre tract as a whole. Tolleson divided the tract into a frontage section, consisting of the outside 250 feet, totaling 16.19 acres, and the remaining 108.81 acres of rear property, and valued the two areas separately.

Tolleson determined that the frontage was worth $267,000 per acre and the rear property was valued at $64,000 per acre. Romenesko and Johnson valued the entire 125 acre tract at $110,000 per acre and $112,500 per acre, respectively.

All three of Glass' experts used the same methodology to determine the total compensation due Glass as a result of the take. Each valued the entire 125 acre tract on a per acre value, and added his estimated values for the depreciated improvements, including the motel, restaurant, Texaco station, signage and parking, to determine the value of the entire tract prior to the take. Each appraiser then determined the value of the actual take and the easements based on the appraised price per acre. The appraisers valued the 124.35 acre residue of the

8

entire tract on their per acre values and then subtracted the values of the applicable easements to determine the pre-take value of the residue. Glass' appraisers determined that the condemnation damaged the residue of the entire tract by 10-15%, the restaurant by 50%, the motel by 20-100%, and the Texaco parcel by 0-15%. Finally, they added the value of the actual take to the damages to the residue and improvements to determine the total compensation owed to Glass.

Romenesko estimated Glass' total damages at $1,461,697. He attributed $84,282 to the actual fee take and the easements, $1,370,411 to damages to the residue and $91,286 to damages to the improvements. Tolleson estimated Glass' total condemnation compensation at $1,454,733, including $230,485 for the actual fee take and easements and $1,224,248 in damages to the residue and improvements. Johnson calculated Glass' total loss as a result of the condemnation to be $2,043,356, which included $96,302 for the actual fee take and easements and $1,947,054 for damages to the residue and improvements.

When questioned as to the unity of use between the actual take parcels and the additional parcels, Tolleson testified there was "continuity of use" because of common ownership . . . . boundaries . . . and the key thing is that the county's land use plan is indicating that this property all be utilized for one type of common use." However, when questioned as to the

actual joint use of the individual additional parcels with the actual take parcels, Tolleson could identify none except "the same ownership."

Romenesko identified the joint use of the actual take and additional parcels as "to plan this as a mixed use development, develop it for that purpose." Romenesko could not identify any development plan.

The trial court, without objection, instructed the commissioners that they were to make three determinations: (1) the fair market value of the property actually taken; (2) the damage, if any, to the residue of the actual take parcels; and (3) the damages to the additional parcels if "there is such a connection or . . . actual and permanent use as to make the enjoyment of the parcels taken reasonably and substantially necessary to the enjoyment of the additional parcels left." The third determination was embodied in Jury Instruction 18, which instructed the commissioners that in order to award "damages to [the] adjoining land" they "must find [unity of use] by a preponderance of the evidence."

On April 29, 2004, the commission issued its report awarding Glass $105,616 for the actual fee take and easements, $475,020 for damages to the residue of the actual take parcels, and $1,279,880 in damages to the additional parcels, to all of which the Commonwealth filed its exceptions. On June 30, 2004,

10

the trial court entered an Order confirming the commissioners' report to which the Commonwealth objected.  We awarded the Commonwealth this appeal.

On appeal, the Commonwealth assigns error to the trial court's orders which (1) allowed Glass to present evidence of damages to the additional parcels owned by him when there was no present unity of use between the parcels; and (2) confirmed the report of the commissioners when the award was unsupported by the evidence.

## II.  ANALYSIS

This case presents two distinct sufficiency of the evidence issues.  The Commonwealth challenges the sufficiency of the evidence to prove the quantum of damages awarded Glass for the actual taking of his land and the injury to the residue of the actual take parcels.  Further, the Commonwealth challenges the sufficiency of the evidence to prove unity of use under the unity of lands doctrine for the award of damages for the additional parcels.  This later issue presents a case of first impression in the Commonwealth, and we shall examine it first.

### A.  Unity of Lands Doctrine

When a portion of a tract of land is taken by eminent domain, the owner is entitled to recover for the damage to the remainder of the parcel taken, but not for damage to separate independent tracts.  Bogese, Inc., v. State Highway Comm'r, 250

Va. 226, 228-29, 462 S.E.2d 345, 346-47 (1995). An exception to that general rule, the unity of lands doctrine, allows an owner to recover for damage to other tracts of land which are not part of the actual taking when three factors are present: unity of use, physical unity, and unity of ownership. Id. (citation omitted). This Court has found that of the three unities, unity of use is the most significant. See Virginia Electric and Power Co. v. Webb, 196 Va. 555, 566, 84 S.E.2d 735, 741 (1954).

We have addressed the unity of lands doctrine on only three prior occasions, but have not specifically addressed the unity of use factor. In the initial case, Webb, we acknowledged the general scope of proof necessary to show unity of use:

> To constitute a unity of property within the rule, there must be such a connection or relation of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used. If the separate tracts of which a part of one is taken are not put to a joint use, they cannot be considered as one parcel in assessing damages to the land not taken.

Id. (emphasis added).

While we recognized the existence of the unity of lands doctrine in Webb, it did not apply in that case because the record contained no evidence that the non-take parcel was "likely to be damaged" because of the condemnation of the actual take parcel. Id. at 567, 84 S.E.2d at 742.

12

In Town of Rocky Mount v. Hudson, 244 Va. 271, 274, 421 S.E.2d 407, 409 (1992), we held the unity of lands doctrine could not apply because the landowner failed to prove the amount of any alleged damages.  We then addressed the unity of ownership element of the unity of lands doctrine in Bogese, 250 Va. at 229, 462 S.E.2d at 347, and we held the landowner could not claim damages to parcels adjoining those in the certificate of the take because there was no common ownership between the actual take and non-take parcels.  Id. at 231, 462 S.E.2d at 348.

The case at bar squarely presents the application of the unity of use element of the unity of lands doctrine.  The Commonwealth does not contest that the additional parcels in this case are under the same ownership and have physical unity with the actual take parcels.  Therefore, the issue before the commission, the trial court, and on appeal is whether the unity of use element of the unity of lands doctrine was proved.

As noted in a leading treatise on the subject, "[i]t is for the jury to determine the ultimate question of unity, or its absence, and to determine whether that unity, and its loss by reason of the taking, ultimately affects the value of the remainder."  4A Julius L. Sackman, et al., Nichols on Eminent Domain § 14B.04[1], at 14B-29 (rev. 3d ed. 2004). In deciding whether the evidence is sufficient to prove the unity of lands

13

doctrine, we review the facts in the light most favorable to Glass, the prevailing party below. Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002).  In a condemnation proceeding, the burden of proof rests upon a landowner to prove the value of the land taken and the resulting damages.  West v. Anderson, 186 Va. 554, 564, 42 S.E.2d 876, 880 (1947).

When damages to additional parcels, which are not part of the actual take parcels are concerned, the burden also resides with the landowner to prove the elements of the unity of lands doctrine.  4A Sackman, supra § 14B-03[1], at 14B-13 ("[T]he condemnee must establish the unity of [the additional] parcel with the parcel taken . . . so that a 'unity' is created and the two become, in the eyes of the law, one.")  In this case, Glass failed to sustain his burden of proof as to the element of unity of use.

> Regardless of contiguity and unity of ownership, ordinarily lands will not be considered a single tract unless there is unity of use.  There must be such a connection or relation of adaptation, convenience, and actual and permanent use, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used.

Id. at 14B-14 (emphasis added).

The Commonwealth argues that it is a necessary condition precedent to consideration of the unity of use between the actual take parcels and any additional parcels that there be an

14

actual, permanent and present joint use of all the parcels as of the date of take. This argument matches the pertinent language from Jury Instruction 18 which directed there must be a finding of "actual and permanent use" and that the separate tracts are being "put to a joint use," on the date of the take. It is apparent from the language in Webb, and in the Nichols treatise, that the actual joint use must be a present use at the date of take, not a use that might occur at some future date. Glass responds there was such an actual, permanent and present joint use of the actual take and additional parcels (the entire 125 acre tract) as a commercial property for future development pursuant to his "business plan."

The evidence was consistent that at the date of take, December 6, 2001, the motel parcel was used to conduct Glass' motel and restaurant business, that the 25-acre parcel was substantially unimproved but contained some parking for the motel and restaurant business and that the 615 parcel was totally unimproved. The record is devoid of any evidence of an actual joint use Glass was making of any of the additional parcels in conjunction with the motel and restaurant business, the only uses of the actual take parcels on December 6, 2001. The evidence was uncontested that of the additional parcels, only the Texaco parcel and the cell tower parcel had any actual

use at the date of take, and those uses were related in no way to the motel and restaurant use of the actual take parcels.

Glass contends, however, that the actual joint use of the actual take and additional parcels is not limited to the motel and restaurant use, but that there was another present joint use in existence on the date of the take. Glass posits there was an actual common use of the entire 125 acre tract under his "business plan" at the date of take. The trial court had characterized this "business plan" as "to use all of the property in a fashion to maximize his investment, which was contemplated as commercial use, consistent with the County of Louisa's comprehensive plan . . . "

Glass contends the business plan for the 125 acre tract was "commercial development" and that was the actual joint use of the entire 125 acre tract on December 6, 2001, thus constituting unity of use. In support of that construct, Glass testified that he retained a surveyor prior to the date of the take to conduct a survey of the entire tract which would have combined the actual take parcels with the additional parcels. However, the survey was never completed. Glass also introduced evidence from a member of the Louisa County Board of Supervisors that the County would, at an unknown future date, rezone the entire tract to a uniform commercial zoning. However, the evidence was uncontested that at the date of the take, the actual take

16

parcels were partly zoned commercial and agricultural while the additional parcels were primarily zoned agricultural and residential. No evidence was introduced as to any prospective change in the zoning for the Fluvanna County portion of any of the affected parcels.

Glass also contended that there was a "business plan" for "commercial development" because the County of Louisa had adopted a plan to extend sewer and water service to Glass's property at an unknown future date. Even without the public sewer and water, Glass testified that his private sewer system currently served the property and had excess capacity to support other commercial development. Glass also offered into evidence the fact that the Louisa County comprehensive plan designated his property for commercial development. Taken as a whole, Glass argued his evidence showed a unity of use between the actual take and additional parcels for "commercial development" under his "business plan."

The record affirmatively demonstrates, however, that Glass' "business plan" was an illusion. Glass had no site plan or plat of the 125 acre tract as of the date of take. Glass had expended nothing for any development expense regarding engineering, site development, financing or anything else that is reflected in the record. There was no evidence Glass had any firm offers, much less a contract, lease, or other binding

17

document from any entity to purchase or develop any part of the 125 acre tract. There was no evidence Glass, personally, had any plans to develop any part of the 125 acre tract for any specifically identifiable purpose.

Glass testified, "I didn't know where to put something on the property. I was afraid if I put something here, something would come along later and mess that up. So I hadn't done a thing so far on it." Glass similarly testified that he had no master plan to develop the property because "when you start out with a big tract of land, and you don't have a master plan of it, you're going to mess up and maybe put something in the wrong spot for something later."

Glass' experts were no more specific. Tolleson identified common boundaries and common ownership, two elements of the unity of lands doctrine not at issue, but could only offer the county's land use plan as evidence of an actual, present and joint use. Romenesko was similarly vague in identifying a future "mixed use development" as a joint use. None of Glass' experts identified any specific use to which the property was to be put at the time of the take or in the future.

In City of Virginia Beach v. Oakes, 263 Va. 510, 515, 561 S.E.2d 726, 728 (2002), a landowner in an eminent domain proceeding attempted to prove damages for the value of his property based on an office building he envisioned might be

18

built upon the property.  The landowner had no site plan, building permit, architectural drawings, contract to sell or lease, or any other evidence of the office building other than his conjecture.  See id. at 517, 561 S.E.2d at 729.  We held that the evidence of damages in that case was "speculative and remote" and could not be the basis for a recovery for the landowner.  Id.

Similarly in this case, the evidence of Glass' "business plan" for "commercial development" is too remote and speculative to establish any unity of use between the actual take parcels and the additional parcels at the date of the take.  Taking all the evidence in the light most favorable to Glass, there is a showing of no more than a vague hope that his combined property would be valuable for an unknown future commercial development purpose.

In City of San Diego v. Neumann, 863 P.2d 725, 730 (Cal. 1993), the Supreme Court of California addressed a unity of use issue similar to the case at bar.  Justice Mosk, in a cogent dissent delineating the concept of unity of use, described the landowner's claim in that case in terms aptly analogous to Glass' claim for the additional parcels.

> Defendants do not claim any present damage to the
> remainder in this case.  They can use their remaining
> land precisely as they have always done.  Instead,
> they want the government, with its deep pocket, to be
> the guarantor that they will realize the opportunity,

19

but face none of the risk of the market.  They want the government to pay them for what the market for developed property would pay for land they still own, even though they have taken no risk in seeking to develop their land and have no firm plans to do so. The balance of interests required by the law of eminent domain, to say nothing of the real estate market, is disturbed when we require compensation for such a speculative claim from the government-read: taxpayers.

Id. at 738 (Mosk, J., dissenting).

The evidence in this record shows there was no actual and present joint use between the additional parcels and the only proven use of the actual take parcels as a motel and restaurant. Further, the evidence of the parcels as an actual joint and present use as a commercial development was too remote and speculative to be credible.  Mere possibility or conjecture that there may be a prospective joinder of the additional parcels in a unified but unknown development with the actual take parcels does not suffice to constitute unity of use in a condemnation proceeding.

If the trial court's judgment as to the additional parcels were affirmed, it would transform

severance damages into a cash cow for landowners who happen to have a portion of their land taken by eminent domain.  Not only are landowners to be compensated for the highest and best use of the land taken, but as to the remainder, landowners may make a claim for severance damages on the basis of nothing more than the dream of a business plan, regardless of the use to which the land itself has been put or any actual damage to the owner's use and enjoyment of the

20

land. . . . In short, the taxpayers [cannot be] ordered to pay for a dream."

Id. at 743-45. Because the evidence was insufficient to prove unity of use, the trial court erred in confirming the commissioners' report insofar as it awarded any damages to Glass for the additional parcels.

### B. Value of the actual take and residue

The commission is entitled to consider the view of the property and the "testimony in open court on the issues joined," Code § 25.1-232, but they may not award compensation based on the view alone. Highway Comm'r v. Foster, 216 Va. 745, 747-48, 222 S.E.2d 780, 782 (1976).

The commission is not bound by the "range of values given in evidence." Id. at 747, 222 S.E.2d at 781. However, "they may not take arbitrary or capricious action and return awards not related to the value of the property." VEPCO v. Patterson, 204 Va. 574, 578, 132 S.E.2d 436, 439 (1963). Whether the award in a particular case bears a reasonable relationship to the testimonial evidence depends upon the facts and circumstances disclosed by that evidence. Foster, 216 Va. at 748, 222 S.E.2d at 782.

### 1. Actual fee take and easements

The commission's award of $105,616 for the property taken in fee from the actual take parcels falls within the range of

the estimated value to which Glass' experts testified.  Johnson valued the fee take, easements and loss of signage at $96,302.  Tolleson valued the same items at $230,485, while Romenesko set the damages at $84,282.

We have noted that the commission is not bound by the particular values given in evidence.  See, e.g. Foster, 216 Va. at 747, 222 S.E.2d at 781.  In fact, we have approved awards that exceed the values to which the appraisers testified if the awards are supported by the evidence.  See id. at 746-49, 22 S.E.2d at 781-83.  In this case, because the "award was within the range of value shown by the evidence," we find that there is sufficient evidence to support it.  State Highway Comm'r v. Frazier, 214 Va. 556, 558, 203 S.E.2d 350, 352 (1974).

2.  Damages to the residue of the actual take parcels

> In every eminent domain case involving a partial taking, the measure of damages to the residue of the property not taken is the difference in the fair market value of the residue immediately before and immediately after the taking.

Oakes, 263 Va. at 516, 561 S.E.2d at 728-29 (citations omitted).  The burden is upon the owner of the property condemned to prove by a preponderance of the evidence that there has been damage to the residue.  Hudson, 244 Va. at 273, 421 S.E.2d at 408.  Where the evidence is conflicting, the commissioners' report will not be disturbed except upon

clear proof that it is based on erroneous principles.
VEPCO, 204 Va. at 577-78, 132 S.E.2d at 439.[2]

Glass' appraisers testified that the fee take and easements damaged the residue of the actual take parcels and their improvements by an average total of $797,178.67. Though the Commonwealth presented conflicting evidence on each of these points, the commission was entitled to weigh the testimony of the parties' experts and find for Glass. "With respect to damages to the residue, the commissioners were not bound to accept the value opinions of the experts if they determined that they were not fairly supported by facts and circumstances." Foster, 216 Va. 745, 748-49, 222 S.E.2d at 782. Thus, the commission's award of $475,020 for damages to the residue of the actual take parcels is supported by the testimony of Glass' experts.[3]

---

[2] The Commonwealth contends that because Glass' experts "appraised all of Glass' land as one 125 acre parcel, the trial commissioners had no evidentiary basis to award damages to [the residue of] the affected parcels because the expert's opinion of damages could not be broken down between the affected parcels and the additional parcels." The per acre values for the entire property provided by Glass' experts did include the actual take parcels so the commissioners could extrapolate the value of each separate parcel.

[3] The Commonwealth also contends that in calculating damages to the residue, Glass "double dip[ped]" by "first valuing his property on its highest and best use as future commercial development" and then claiming "damages to his current improvements which were at the end of their economic life and . . . incompatible with any future development." The Commonwealth made no objection to the admission of this evidence

### III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the trial court confirming the award of damages for the value of the property actually taken and for the damages to the residue of the actual take parcels. We will reverse the judgment of the trial court confirming the award of damages for the additional parcels because the evidence failed to prove unity of use for application of the unity of lands doctrine.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment</u>.

---

of damages for incompatible uses, nor did it take exception to the commissioners' report for that reason. Thus, the Commonwealth's argument is barred by Rule 5:25.