PRESENT: Lemons, C.J., Mims, Powell, Kelsey, and McCullough, JJ., and Lacy and Millette, S.JJ.

VIRGINIA ELECTRIC AND POWER COMPANY,
D/B/A DOMINION VIRGINIA POWER

                                           OPINION BY
v.  Record No. 150877                 JUSTICE CLEO E. POWELL
                                          June 16, 2016

WALTER E. HYLTON

FROM THE CIRCUIT COURT OF WISE COUNTY
John C. Kilgore, Judge

Virginia Electric and Power Company, d/b/a Dominion Virginia Power ("Dominion") appeals the decision of the trial court dismissing its petition for condemnation. Additionally, Dominion appeals the trial court's decision to award attorneys' fees to the respondent, Walter E. Hylton ("Hylton"). Dominion further takes issue with the trial court's denial of its motions in limine regarding evidence related to the separate value of coal reserves on the property, the value of a non-existent surface mine on the property and the devaluation of the surrounding property.

I. BACKGROUND

On December 3, 2007, Dominion applied for certificates of public convenience and necessity from the State Corporation Commission ("SCC"). Dominion's application related to a proposed 138 KV double circuit transmission line that would connect Dominion's recently approved power plant in Wise County with an existing substation in Russell County. On July 11, 2008, the SCC issued a final order granting Dominion the necessary certificates.

On November 6, 2008, Dominion's agent delivered to Hylton a written offer to purchase a 7.88 acre easement on his property for $19,100, to construct the transmission line. At the time, Hylton owned approximately 354 acres across 20 contiguous tracts and 2 non-contiguous tracts. He owned the surface and mineral rights of some tracts and only the mineral rights of others.

As part of its offer, Dominion included a copy of its appraisal of the property subject to the easement and the damage to the residue. The appraisal had been prepared by Michael Elwell ("Elwell"), a certified general appraiser. Elwell based his appraisal on his inspection of the property, information from Hylton, public records, and a survey from Dominion. Elwell certified that the appraisal conformed to the Uniform Standards of Professional Appraisal Practice and was based on his personal, unbiased professional analyses and opinions, not "a predetermined value or direction in value that favors the . . . client."

The appraisal stated the easement crossed three tax parcels that represented only 65 of Hylton's approximately 354 acres. Elwell noted that the property subject to the easement was zoned for Agricultural-Rural Residential uses and contained no improvements. Elwell noted the area's "primary land uses" were residential and agricultural and determined that the property's highest and best use was "rural residential and agricultural use." Elwell's appraisal acknowledged that, according to Hylton, two major coal seams run through or near the property subject to the easement and that Hylton's ability to sell or lease the associated mineral rights might be damaged if a power line is erected on the seams. However, Elwell instructed Hylton to discuss the issue of subsurface minerals with Dominion as they involve "engineering and operations issues." As such, Elwell did not consider the mineral rights in determining the fair market value of the property.

On February 19, 2009 (the date of the "take") the parties signed an agreement granting Dominion the right to enter Hylton's property and construct the transmission line. On March 4, 2010, Dominion filed its petition for condemnation of the 7.88 acre easement on Hylton's land. In Paragraph 10 of the petition, Dominion alleged that it "has complied with all of its statutory obligations associated with the exercise of eminent domain as to the Easement." Further,

2

Paragraph 11 of the petition alleged that "Dominion had complied with Code § 25.1-204 by making a bona fide offer to purchase the Easement . . . , but Dominion and Hylton have been unable to agree on price." The petition was limited to the surface use of Hylton's property; it did not seek to condemn any mineral rights.

On June 17, 2010, Hylton filed his Answer and Grounds of Defense. Hylton expressly admitted the allegations contained in Paragraph 10 of Dominion's petition. However, Hylton went on to admit that Dominion "may feel that a bona fide offer of purchase has been made, however, [Hylton] denies the sufficiency of the offer, so, accordingly, the allegations of Paragraph 11 are DENIED." Hylton expressly elected to proceed with the empanelment of a jury for the determination of just compensation.

On February 2, 2011 and February 8, 2011, Hylton filed praecipes certifying that the case was mature for trial on the merits and requesting the trial be set. On July 18, 2011, Hylton petitioned the trial court pursuant to Code §§ 25.1-224 and -243, to compel Dominion to pay him the $19,100 Dominion had offered. Dominion did not object and the court ordered Dominion to pay that sum to Hylton.

Discovery revealed that, after the take, Hylton hired Phillip Lucas ("Lucas"), a mining engineer, to investigate coal on Hylton's property. Lucas was expected to testify as an expert at trial. Lucas was expected to testify that the development of coal deposits on Hylton's property, including those deposits under the property at issue, "was consistent with one of the highest and best uses of the property on the date of valuation." Lucas was further expected to testify about analysis of several coal seams on the property as well as surface mine plans he developed. It was admitted, however, that, at the time of the take, there were no surface mining permits on

Hylton's property. Lucas further opined that all coal reserves under the take area were lost and unrecoverable as a result of the take.

Additionally, it was revealed that, for many years prior to the take, Rapoca Energy Company ("Rapoca") had leased an underground deep mine on Hylton's property. The mine partially extended under the property at issue. However, Rapoca had ceased mining operations prior to August 1, 2008, the mining permit was in "temporary cessation," the mine was now flooded and Rapoca had no plans to reopen the mine. However, Hylton claimed that Rapoca continued to pay Hylton the minimum royalties required under the lease.

On September 27, 2011, Dominion filed a motion in limine seeking (in relevant part) to prohibit Hylton from presenting evidence at trial of "the separate value of coal" on the property, "damage of any kind to any tracts not taken in these proceedings," and "damages for duplicative or inconsistent claims." After briefing and argument, the trial court ruled:

> The motion is denied insofar as it seeks to exclude from the trial the evidence of the separate value of coal, damage of any kind to tracts no part of which have been taken in these proceedings, the value of a potential surface coal mine, royalty income, the value of royalty income of a surface mine, and royalty income and the value of royalty income of an underground mine.

On April 18, 2012, Hylton requested the trial court set the case for trial to determine the just compensation issue. The trial court set the trial for November 26, 2012.

On October 9, 2012, Hylton deposed Elwell. Elwell testified that he had been licensed in Virginia for about nine months when he conducted the appraisal, that he had never appraised coal reserves, and that he was unfamiliar with and not qualified or trained in mineral evaluation. Elwell admitted that, although Hylton told him the property was leased for "mineral extraction" and he was concerned about damage to his coal, Elwell did not get a copy of the mining lease and did not ask whether the property was producing income. Elwell explained that his appraisal

4

focused solely on surface rights and, therefore, he did not look at the plans for the towers or consider their impact on the value of the property.

On October 23, 2012, Hylton filed a motion to dismiss the petition. Hylton argued that Dominion's pre-petition offer to purchase the condemned property was not a bona fide offer, as required by Code § 25.1-204. Therefore, according to Hylton, Dominion had failed to meet the jurisdictional requirements necessary to institute the present case. Hylton claimed that Dominion's offer was not bona fide because Elwell's appraisal 1) only considered 65 acres out of Hylton's approximately 354 acres, 2) did not consider the existing deep mine lease, 3) did not use the proper valuation technique, 4) misidentified the highest and best use of the property, 5) failed to consider the loss of coal under the towers that Dominion's mining expert conceded would have a value of $84,258, 6) failed to consider a newer survey in favor of tax records, 7) failed to include the mineral rights, and 8) only represented approximately 22.9% of the actual value of the property according to Dominion's mining expert. In response, Dominion argued that Hylton had waived the issue as to whether the offer was a bona fide offer to purchase because Hylton had not objected to the issue in his answer and grounds for defense. Dominion further argued that its offer was made in good faith and, therefore, was a bona fide offer to purchase. After considering the parties' arguments on the matter, the trial court indicated that it would grant the motion to dismiss.

On December 13, 2012, Hylton filed a motion for costs, expenses, and attorney's fees pursuant to Code § 25.1-419. In an April 22, 2013 letter opinion, the trial court informed the parties that, because it had determined that Dominion could not acquire the property by condemnation, Hylton's motion for costs, expenses, and attorney's fees pursuant to Code § 25.1-419 was "well taken."

5

On August 1, 2013, the trial court entered an order granting Hylton's motion to dismiss. In its order, the trial court determined that Hylton had not waived the issue of jurisdiction because, in his answer and grounds for defense, Hylton sufficiently denied that Dominion had complied with Code § 25.1-204. The trial court further found that Dominion's offer was "deficient" because

> (1) [the] appraiser made no comparative judgment as to what is the highest and best use of the property; (2) the appraiser did not consider coal or mineral estate of the property, but appraised only the surface when the landowner owned surface and mineral rights; (3) the appraiser did not consider that the property was income producing from an existing permitted deep mine lease; (4) the appraiser did not examine the plans or consider damage to the landowner's remaining residue property from the concrete and steel towers placed on the property and resulting effect on future surface and subsurface usage; (5) the appraiser did not appraise all of the landowner's tracts of land but only 65 acres of the total 350 acres, which were only four of the landowner's twenty contiguous tracts.

According to the trial court, an appraisal with such deficiencies could not be considered a bona fide offer. It further found that Dominion "either failed to review its appraisal or approved the appraisal with its many facial deficiencies. Either of which would preclude any argument that [Dominion's] offer to Hylton was made in good faith."

Although the trial court granted the motion to dismiss, it refused to enter a final order "until such time as the [trial court] takes evidence and decides by final written order the remaining issues in the competing motions for reimbursement filed by the parties." The trial court went on to explain that, because Dominion cannot acquire Hylton's property by condemnation, Code § 25.1-419 applies. It granted Hylton's motion for costs and fees and ordered an evidentiary hearing to determine the amount.

Prior to the evidentiary hearing, the parties stipulated that the fee agreement that Hylton entered into with his attorneys only obligated Hylton to pay necessary expenses, a "contingent

6

fee of 33 1/3 % of all sums recovered over the [$19,100] offer," and an hourly fee of $100 per hour for appeal work. Paragraph 9 of the fee agreement also provided that "if representation is terminated prior to the conclusion of the case, the attorneys shall be entitled to receive from the proceeds of any recovery a reasonable fee for the work the attorneys have performed and the costs incurred."

The parties further stipulated that neither of Hylton's attorneys prepared an invoice for their services until after the trial court announced it was granting the motion to dismiss. One of Hylton's attorneys admitted that he failed to keep any records of his time and his invoice was "based upon an estimate that he worked 50% of the time" that the other attorney worked on the case. The parties also agreed that Hylton had never been billed for any of the attorneys' fees claimed, nor had either attorney ever requested payment.

After considering the matter, the trial court issued a letter opinion finding that Hylton's attorneys' fees accrued and were incurred when their services were rendered. The trial court further found that this case presented a "rare set of facts in which a state actor is unable to exercise its power of eminent domain due to its own bad faith." As a result, Hylton had "been forced by state action" to incur significant costs and expenses, his counsel had expended significant time and effort, and failure to compensate him and his counsel for reasonable costs, expenses, and fees "would be not only unreasonable, but unconscionable." Furthermore, the trial court determined that it would be unreasonable "to expect Mr. Hylton or his counsel to anticipate or plan for such an outcome when drafting and executing their fee agreement." Therefore, the trial court determined that, under Code § 25.1-419, Hylton was entitled to $312,575.10 in attorneys' fees and $141,866.07 for costs and expenses. After crediting Dominion $39,198.95

for fees it had already paid, the trial court awarded Hylton $415,242.22.

Dominion appeals.

## II. ANALYSIS

In its appeal, Dominion raises five assignments of error. Its first assignment of error contends that the trial court erred by finding that its offer was not a bona fide offer. The second assignment asserts that Hylton was procedurally barred from raising an objection related to the bona fides of Dominion's offer. Dominion's third and fourth assignments of error relate to the trial court's subsequent decision to award attorneys' fees as a result of the trial court's decision to grant Hylton's motion to dismiss. Finally, in its fifth assignment of error, Dominion takes issue with the trial court's decision to deny its motion in limine.

## A. Hylton's Motion to Dismiss

We begin by noting that Dominion's first four assignments of error all relate to Hylton's motion to dismiss. Of those assignments of error, the second presents a procedural question and a reversal on this matter will render the remaining assignments of error related to the motion to dismiss moot. Accordingly, we will address Dominion's second assignment of error first.

In its second assignment of error, Dominion argues that Hylton waived his objection to the trial court's jurisdiction over the condemnation proceeding because he failed to raise his objection in a timely manner. Dominion contends that Hylton was required to raise any objection to jurisdiction in his answer and grounds of defense. According to Dominion, Hylton failed to do so and, therefore, has waived any objection to jurisdiction. Dominion further asserts that Hylton expressly waived his objection to the trial court's jurisdiction by conceding that Dominion had met all the statutory prerequisites for bringing the condemnation action. Dominion also relies on the fact that Hylton took a number of steps that indicated that he agreed

8

that the jurisdictional prerequisites had been met, such as granting Dominion right of entry and possession of the property as well as seeking and receiving compensation for certain litigation costs.

In response, Hylton argues that he timely raised his objection to the trial court's jurisdiction because "[n]o statute required Hylton to challenge Dominion's offer in his answer." Therefore, according to Hylton, he could file his motion to dismiss at any point during the litigation once he had an adequate basis for doing so. He further contends that his denial of the allegations in Paragraph 11 of the petition for condemnation indicated that he was not waiving a challenge to the bona fides of Dominion's offer.

In deciding this issue, we must again revisit the meaning of the term "jurisdiction."

> The term jurisdiction embraces several concepts including subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is in rem seizure of a res; and "the other conditions of fact [that] must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree."

Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990) (quoting Farant Inv. Corp. v. Francis, 138 Va. 417, 427-28, 122 S.E. 141, 144 (1924)).

Subject matter jurisdiction is clearly not implicated in the present case. The bona fide effort requirement of Code § 25.1-204 does not "define the class of cases . . . over which the circuit court has authority to adjudicate." Board of Supervisors v. Board of Zoning Appeals, 271 Va. 336, 344, 626 S.E.2d 374, 379 (2006). Rather, it is clear that subject matter jurisdiction to hear condemnation cases is conferred upon the circuit courts by Code § 25.1-201. Therefore, the bona fide effort requirement of Code § 25.1-204 falls into the category of "other jurisdictional

9

elements" which "generally will be considered waived unless raised in the pleadings filed with the trial court." Morrison, 239 Va. at 170, 387 S.E.2d at 756. In other words, the existence of a bona fide offer "is a procedural requirement which is deemed waived if an objection is not timely raised." Hewitt v. Virginia Health Servs. Corp., 239 Va. 643, 645, 391 S.E.2d 59, 60 (1990).

Although the procedural framework of condemnation proceedings contains many statutes, only Code § 25.1-213[1] addresses when and how a landowner must raise an objection to the trial court's jurisdiction. Code § 25.1-213 states,

---

[1] Hylton notes that, in its argument to the trial court on this issue, Dominion did not rely upon or even mention Code § 25.1-213; instead, Dominion relied on Code § 25.1-219. Although he never expressly argues this point, it is clear that Hylton is implicitly arguing that Dominion has failed to preserve any argument related to Code § 25.1-213. See Rule 5:25. We disagree.

Preservation under Rule 5:25 does not require a party to precisely reference the exact statute or rule upon which they rely in making an argument. Rather, a party need only give the trial court "sufficient 'notice of the substance of the objection.'" Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 353 n.7, 717 S.E.2d 134, 137 n.7 (2011) (quoting Overton v. Slaughter, 190 Va. 172, 179, 56 S.E.2d 358, 361 (1949)). Here, Dominion argued that Code § 25.1-219 prohibits the trial court from considering the jurisdictional issues because Hylton failed to raise a timely objection to the trial court's jurisdiction. In its sur-reply to Hylton's motion to dismiss, Dominion pointed out that "[t]he time and manner of raising and deciding challenges to jurisdictional issues may properly be limited by statute and have been so limited." (Emphasis added.) Dominion further asserted that

> a determination that a bona fide offer was made is only jurisdictional to the extent that there is an objection raising the issue. Without a proper objection to jurisdiction, no jurisdictional issue arose, and the court has complete jurisdiction to proceed to adjudicate [the] just compensation phase.

Additionally, we note that Dominion's citation to Code § 25.1-219(B) would have alerted the trial court to the nature of Dominion's argument. The statute states, in relevant part:

> [I]f no answer and grounds of defense has been filed objecting to the jurisdiction of the court to hear the case and to proceed with the appointment of commissioners or the empanelment of a jury, the court shall enter an order fixing a date for the trial of the issue of just compensation.

Id. (emphasis added).

Accordingly, we find that the trial court had sufficient notice of the substance of Dominion's objection and, therefore, Rule 5:25 does not bar our consideration of Dominion's argument related to Code § 25.1-213.

> Within 21 days of the service [of the petition for condemnation] any such owner who desires to assert any objection or defense to the taking or damaging of his property or to the jurisdiction of the court to hear the case, and to make his election to proceed with either the appointment of commissioners or the empanelment of a jury, shall file (i) his answer and grounds of defense designating the property in which he claims to be interested, (ii) the grounds of any objection or defense to the taking or damaging of his property or to the jurisdiction of the court to hear the case, and (iii) his election to proceed with either the appointment of commissioners or the empanelment of a jury for the determination of just compensation.

(Emphases added.)

Thus, Code § 25.1-213(ii) makes it clear that a landowner objecting to a trial court's jurisdiction over a condemnation proceeding must raise the issue within 21 days of being served with the petition for condemnation as part of the answer and grounds of defense. We note that no objection was raised to the fact that Hylton did not file his answer and grounds of defense within the required 21 days[2], therefore, the question before this Court is limited to whether Hylton sufficiently asserted his objection to the trial court's jurisdiction to hear the case and the grounds therefore in his answer and grounds of defense. As "we are in an equal position with the court below to judge the sufficiency of the pleadings," our review of whether Hylton sufficiently raised an objection in his pleadings is conducted de novo. Byler v. Virginia Elec. & Power Co., 284 Va. 501, 507, 731 S.E.2d 916, 920 (2012).

As an initial matter, Hylton's answer and grounds of defense does not contain any mention of the terms "object," "objection," or "jurisdiction." Although his answer and grounds of defense contains a general denial to the allegations in Paragraph 11 of the petition for condemnation, the context of this denial indicates that it is based on the sufficiency of

---

[2] The record demonstrates that Hylton did not file his answer and grounds of defense until 104 days after being served with the petition for condemnation.

Dominion's offer. Notably, in the next paragraph of his answer and grounds of defense, Hylton elected to proceed with the empanelment of a jury for the determination of just compensation. Thus, Hylton's denial of the sufficiency of the offer, when read in conjunction with the subsequent request for a determination of just compensation, indicates that Hylton only took issue with the amount of Dominion's offer.

We note, however, that an offer deemed insufficient by a landowner will almost always involve a figure not likely to be accepted. As we have expressly recognized that a bona fide offer "need not be the figure likely to be accepted," Norfolk Redev't & Hous. Auth. v. Baylor, 214 Va. 1, 3, 197 S.E.2d 335, 337 (1973), it is clear that an insufficient offer, without more, is not a valid basis for finding that an offer was not a bona fide offer. Therefore, Hylton's general denial of Paragraph 11 of the petition for condemnation based on his disagreement with the sufficiency of Dominion's offer cannot be considered an objection to the bona fides of the offer.

Thus, we can find nothing in Hylton's answer and grounds of defense that gives either the trial court or Dominion any indication that he was objecting to the trial court's jurisdiction based on Dominion's alleged failure to make a bona fide offer. Therefore, we find that Hylton waived his objection to the trial court's jurisdiction over this matter by failing to timely raise an objection as required by Code § 25.1-213(ii). Accordingly, we will reverse the decision of the trial court to grant the motion to dismiss and remand the matter for further proceedings.[3]

### B. Dominion's Motion in Limine

In its remaining assignment of error, Dominion argues that the trial court erred in denying its motion in limine. Specifically, Dominion takes issue with the trial court's decision to allow

---

[3] Our determination that Hylton was procedurally barred from raising his objection to the trial court's jurisdiction renders the remaining assignments of error related to the Hylton's motion to dismiss moot.

Hylton to present evidence related to 1) the separate value of the coal reserves on the property; 2) the value of a possible surface mine on the property; and 3) the devaluation of the neighboring tracts not subject to the take.

### 1. Separate Value of the Coal Reserves

Dominion contends that the trial court erred in denying its motion in limine with regard to the separate value of the coal reserves on the property to be condemned because such evidence is inadmissible. Dominion acknowledges that Hylton could offer evidence of the existence of coal on the property to establish the fair market value of the property, but it asserts that the value of the property is to be determined as a whole, not by adding together the separate value of individual components. We agree.

> Where mineral deposits exist in condemned property, the measure of compensation is, as in other eminent domain cases, the fair market value of the property, and the presence of mineral deposits is an element of value to be considered. Henrico County v. Wilkerson, 226 Va. 84, 88, 307 S.E.2d 450, 452 (1983). Nevertheless, the separate value of the mineral deposits themselves, and the future rents and royalties that would be received for them when and if they are removed from the land, are inadmissible for proving either the value of the property taken or damage to the residue. Id. at 89, 307 S.E.2d at 452. The reason for that rule is that such evidence invites speculation and conjecture, because it relates to "conditions which did not, in fact, exist on the condemned land and . . . future circumstances that may or may not occur." Id.

East Tennessee Natural Gas Co. v. Riner, 239 Va. 94, 97-98, 387 S.E.2d 476, 478 (1990).

In seeking to rebut our previous holdings on this issue, Hylton argues that modern techniques allow for more accurate calculations related to the coal reserves. Even assuming that this were true, it does not change the fact such valuations invite speculation and conjecture because they are based on "conditions which did not, in fact, exist on the condemned land" at the time of the take and "future circumstances that may or may not occur." Wilkerson, 226 Va. at

13

89, 307 S.E.2d at 452. Notably, there is no evidence indicating when and if the coal will actually be mined and, if it is, what the price of coal will be at that time. Accordingly, we find the trial court erred in denying Dominion's motion in limine on this point.

## 2. Surface Mine

Dominion next argues that the trial court erred in denying its motion in limine with regard to evidence related to a potential surface mine on the property. Dominion notes that at the time of the take, there were no permits allowing surface mining on Hylton's property, nor were any pending. Dominion further points out that the plans related to the surface mine were developed as part of the present litigation. Therefore, Dominion asserts that such evidence is inadmissible, as it will necessarily lead to improper speculation. We agree.

In ascertaining damages resulting from a taking, "both present and future circumstances which <u>actually affect the value of the property at the time of taking</u> may be considered." <u>Riner</u>, 239 Va. at 100, 387 S.E.2d at 479 (emphasis added). Implicit in this statement is the notion that, to be considered, the circumstances that currently affect or will affect the property must be known at the time of the taking. <u>See</u> <u>City of Virginia Beach v. Oakes</u>, 263 Va. 510, 517, 561 S.E.2d 726, 729 (2002). At the same time, it is improper to consider circumstances that are "based on future expenditures or improvements" to the property, as such circumstances involve too much speculation and conjecture. <u>Appalachian Power Co. v. Anderson</u>, 212 Va. 705, 708, 187 S.E.2d 148, 152 (1972).

In the present case, the record unequivocally demonstrates that, at the time of the take, a surface mine did not exist on the property nor had one been contemplated. It was only in the course of discovery that the plans for a surface mine were developed. Clearly, any award of damages based upon consideration of the value created by a hypothetical surface mine would

14

necessarily be speculative.[4]  As the surface mine was not contemplated at the time of the taking,

evidence of value related to such a use is inadmissible.  Accordingly, the trial court erred in

denying Dominion's motion in limine on this point.

### 3.  Neighboring Tracts

Dominion further claims that the trial court erred in denying its motion in limine with

regard to evidence of the devaluation of the neighboring tracts owned by Hylton that were not

part of the take.  Dominion asserts the only basis upon which Hylton could be compensated for

damages to the neighboring tracts is if the unity of lands doctrine applies.  However, according to

Dominion, because there is no evidence that the neighboring tracts share a unity of use with

those tracts that were part of the take, the unity of lands doctrine does not apply.  We disagree.

> Generally, when a portion of a tract of land is taken by eminent
> domain, the owner is entitled to recover for the damage to the
> remainder of that tract, but not for damage to separate and
> independent tracts.  An exception to the general rule is the so-
> called unity of lands doctrine.  Under this doctrine, an owner may
> be compensated for damage to other tracts of land caused by a
> taking when three factors are present, viz., unity of use, physical
> unity, and unity of ownership.

Bogese, Inc. v. State Highway & Transp. Comm'r, 250 Va. 226, 228-29, 462 S.E.2d 345, 346-47

(1995) (citing Virginia Electric & Power Co. v. Webb, 196 Va. 555, 566, 84 S.E.2d 735, 741-42

(1954)).

---

[4] It is worth noting that allowing such evidence would virtually guarantee that every condemnation would be litigated, because landowners would be able to create new "uses" for the property that had never been previously contemplated for the sole purpose of increasing the value of the property.  Clearly, such an approach would undermine the purposes served by Code § 25.1-204 and "the public policy of avoiding the expense and delay of condemnation litigation by consensual bargain and sale" that serves as the cornerstone of our condemnation statutes. Baylor, 214 Va. at 3, 197 S.E.2d at 337.

"[O]f the three unities, unity of use is the most significant." Commonwealth Transp. Comm'r v. Glass, 270 Va. 138, 148, 613 S.E.2d 411, 417 (2005). Unity of use requires the existence of

> "such a connection or relation of adaptation, convenience, and actual and permanent use, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used."

Id. at 149, 613 S.E.2d at 417 (quoting 4A Julius L. Sackman, et al., Nichols on Eminent Domain § 14B.04[1], at 14B-14 (rev. 3d ed. 2004)). To demonstrate unity of use, a party must demonstrate "an actual, permanent and present joint use of all the parcels as of the date of take" and "not a use that might occur at some future date." Id. at 149-50, 613 S.E.2d at 417-18.

We note, however, that "'it is for the jury to determine the ultimate question of unity, or its absence, and to determine whether that unity, and its loss by reason of the taking, ultimately affects the value of the remainder.'" Id. at 149, 613 S.E.2d at 417 (quoting 4A Sackman, supra § 14B.04[1], at 14B-29). In the present case, there is evidence from which a jury could find a unity of use, given that, on the date of the take, Hylton was receiving royalties related to an existing underground mine on his property which partially extended under the parcel subject to the take. Accordingly, the trial court did not err in denying the motion in limine with regard to potential evidence that showed devaluation of the neighboring tracts owned by Hylton.

### III. CONCLUSION

For the foregoing reasons, we reverse the decision of the trial court to grant the motion to dismiss. Furthermore, we reverse the trial court's decision denying Dominion's motion in limine with regard to evidence related to the separate value of the coal and the potential surface mine. However, because the issue of whether the unity of lands doctrine applies is a question of fact to be decided by the jury, denying the motion in limine on this issue was appropriate. Accordingly,

we affirm the decision of the trial court denying Dominion's motion in limine with regard to evidence related to damage to the neighboring tracts owned by Hylton that were not part of the take.

Affirmed in part,
reversed in part,
and remanded.